**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION**

|  |  |
|---|---|
| *In re Prudential Insurance Company of America SGLI/VGLI Contract Litigation*<br><br>This document relates to: ALL ACTIONS | **CLASS ACTION**<br><br>Master Case No. 3:11-md-02208-MAP<br><br>[consolidated cases 3:10-cv-30163-MAP, 3:11-cv-30058-MAP; 3:11-cv-30059-MAP; 3:11-cv-30060-MAP] |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

[Leave to File Granted On October 3, 2012]

**[REDACTED VERSION]**

[Unredacted original filed conditionally under seal]

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

ISSUES FOR SUMMARY JUDGMENT ...................................................................4

LEGAL STANDARD..................................................................................................5

STATEMENT OF UNDISPUTED EVIDENCE..........................................................6

ARGUMENT .............................................................................................................12

    A.    Plaintiffs Suffered a Cognizable Legal Injury. ...................................12

    B.    Plaintiffs Seek Summary Judgment Affirming that Disgorgement Is An Appropriate Remedy, Irrespective of Individualized Loss. ...................15

    C.    Plaintiffs Seek Summary Judgment Affirming That Moratory Damages Are An Appropriate Remedy, Irrespective of Individualized Loss. ....................19

    D.    Analysis Of Each Of Plaintiffs' Claims Further Demonstrates That Summary Judgment Is Appropriate.......................................................................23

        1.    Violation of 38 U.S.C. § 1970(d)............................................23

        2.    Breach of Contract ...................................................................25

        3.    Unjust Enrichment ...................................................................25

        4.    Breach of Fiduciary Duty.........................................................27

CONCLUSION...........................................................................................................28

# TABLE OF AUTHORITIES

## Cases

*Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat. Ass'n*,
  731 F.2d 112 (2d Cir.1984)......................................................................... 26

*Arthur D. Little, Inc. v. Dooyang Corp.*,
  147 F.3d 47 (1st Cir. 1998)......................................................................... 12

*B & T Masonry Const. Co., Inc. v. Pub. Serv. Mut. Ins. Co.*,
  382 F.3d 36 (1st Cir. 2004)........................................................................... 5

*Bell v. Hood*,
  327 U.S. 678 (1946)................................................................................... 23

*Bigelow v. RKO Radio Pictures*,
  327 U.S. 251 (1946)................................................................................... 14

*Brown v. Hiatts*,
  82 U.S. 177 (1873)..................................................................................... 20

*Burlington Indus., Inc. v. Ellerth*,
  524 U.S. 742 (1998)..................................................................................... 6

*Carey v. Piphus*,
  435 U.S. 257 (1978)................................................................................... 25

*Cummings v. Connell*,
  402 F.3d 936 (9th Cir. 2005) ..................................................................... 24

*Cupid v. Local 116 of the International Union of Electronic, Electrical, Salaried, Machine and
  Furniture Workers*,
  1993 WL 21794 (E.D. Pa. Jan. 27, 1993) ................................................. 24

*Davis Cattle Co., Inc. v. Great Western Sugar Co.*,
  393 F. Supp. 1165 (D. Colo. 1975).......................................................... 22

*Dorris v. Absher*,
  179 F.3d 420 (6th Cir. 1999) ....................................................................... 5

*Eckard Brandes, Inc. v. Riley*,
  338 F.3d 1082 (9th Cir. 2003) ................................................................... 26

*Farmers Reservoir & Irr. Co. v. City of Golden*,
  113 P.3d 119 (Colo. 2005)........................................................................ 19

*Flynn v. AK Peters, Ltd.*,
  377 F.3d 13 (1st Cir. 2004)........................................................................ 25

*Ford Motor Co. v. Transp. Indem. Co.*,
  45 B.R. 843 (E.D. Mich. 1984).................................................................. 22

*Franklin v. Gwinnett County Pub. Sch.*,
    503 U.S. 60 (1992) ................................................................................................................. 23

*Garcia v. Prudential Life Ins. Co. of Am.*,
    No. 08-5756, 2009 WL 5206016 (D.N.J. Dec. 29, 2009) ................................................... 2

*Glus v. Brooklyn E. Dist. Terminal*,
    359 U.S. 231 (1959) ............................................................................................................. 14

*Goldberg Realty Group v. Weinstein*,
    669 A.2d 187 (Me. 1996) ..................................................................................................... 16

*Grynberg v. Roberts*,
    698 P.2d 430 (N.M. 1985) ................................................................................................... 21

*Guyana Tel. & Tel. Co., Ltd. v. Melbourne Int'l Communications, Ltd.*, 329 F.3d 1241 (11th Cir.
    2003) ...................................................................................................................................... 24

*Harrington v. City of Albuquerque*,
    392 F. Supp. 2d 1237 (D. N. M. 2004) ............................................................................... 24

*In re Stix & Co., Inc.*,
    27 B.R. 252 (Bankr. E.D. Mo. 1983) .................................................................................... 3

*Janigan v. Taylor*,
    344 F.2d 781 (1st Cir. 1965) ............................................................................................... 23

*Jimenez v. Peninsular & Oriental Steam Navigation Co.*,
    974 F.2d 221 (1st Cir.1992) .................................................................................................. 5

*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison*,
    958 P.2d 1062 (Cal. 1998) ................................................................................................... 13

*Kittansett Club v. Philadelphia Indem. Ins. Co.*,
    CIV.A. 11-11385-DJC, 2012 WL 3947954 (D. Mass. Sept. 10, 2012) ............................... 5

*LiButti v. United States*,
    107 F.3d 110 (2d Cir. 1997) ............................................................................................... 28

*Malone v. Norwest Fin. Cal., Inc.*,
    245 B.R. 389 (E.D. Cal. 2000) ............................................................................................ 24

*Marmo v. Tyson Fresh Meats, Inc.*,
    457 F.3d 748 (8th Cir. 2006) ............................................................................................... 26

*MBM Fin. Corp. v. Woodlands Operating Co.*,
    L.P., 292 S.W.3d 660 (Tex. 2009) ...................................................................................... 25

*McIntosh v. Gilley*,
    2010 WL 4872958  (D.D.C. Nov. 30, 2010) ...................................................................... 26

*McLemore v. Regions Bank*,
    682 F.3d 414 (6th Cir. 2012) ................................................................................................ 6

*Merrimon v. Unum Life Ins. Co. of Am.*,
    845 F. Supp. 2d 310 (D. Me. 2012) ............................................................................ 21

*Miller v. Berkoski*,
    297 N.W.2d 334 (Iowa 1980) .................................................................................... 16

*Moore & Co. v. T–A–L–L, Inc.*,
    792 P.2d 794 (Colo. 1990) ........................................................................................ 16

*Nashua & Lowell R. Corp. v. Boston & Lowell R. Corp.*,
    61 F. 237 (1st Cir. 1894) ........................................................................................... 20

*Nichols v. Minnick*,
    885 N.E.2d 1 (Ind. 2008) ........................................................................................... 16

*Norfolk & W. Ry. Co. v. Ayers*,
    538 U.S. 135 (2003) ..................................................................................................... 6

*Oenga v. United States*,
    91 Fed. Cl. 629, 2010 WL 605175 (Fed. Cl. Feb. 12, 2010) ...................................... 5

*Olwell v. Nye & Nissen Co.*,
    173 P.2d 652 (Wash. 1946) .................................................................................. 16, 17

*Oscar Gruss & Son, Inc. v. Hollander*,
    337 F.3d 186 (2d Cir. 2003) ........................................................................................ 5

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*,
    575 F.2d 1152 (6th Cir. 1978) ................................................................................... 13

*Parke v. First Reliance Standard Life Ins. Co.*,
    368 F.3d 999 (8th Cir. 2004) ..................................................................................... 24

*Parker v. Brinson Const. Co.*,
    78 So. 2d 873 (Fla. 1955) .......................................................................................... 20

*Parker v. OSGLI*,
    91 F. Supp. 2d 820 (E.D. Pa. 2000) .......................................................................... 14

*Phillips v. Prudential Ins. Co. of Am.*,
    No. 11-cv-0058-DRH, 2011 WL 5915148 (S.D. Ill. Nov. 28, 2011) .......................... 2

*Polaroid Corp. v. Schuster's Exp., Inc.*,
    484 F.2d 349 (1st Cir. 1973) ....................................................................................... 5

*Porter v. Warner Holding Co.*,
    328 U.S. 395 (1946) ................................................................................................... 17

*Provident Life & Accident Ins. Co. v. Waller*,
    906 F.2d 985 (4th Cir.1990) ...................................................................................... 26

*Prudential Ins. Co. of Am. v. Armwood*,
    362 F. Supp. 1328 (E.D.N.Y. 1973) ......................................................................... 19

*Prudential Ins. Co. of Am. v. Athmer*,
    178 F.3d 473 (7th Cir. 1999) ................................................................. 6, 26

*Quechee Lakes Rental Corp. v. Boggess*,
    158 Vt. 258 (1992) ...................................................................................... 16

*Rakas v. Illinois*,
    439 U.S. 128 (1978) .................................................................................... 13

*Red Star Towing & Transp. Co., Inc. v. Cargo Ship Ming Giant*,
    563 F. Supp. 224 (S.D.N.Y. 1983) .............................................................. 19

*Rice v. Office of Servicemembers' Group Life Ins.*,
    260 F.3d 1240 (10th Cir. 2001) ............................................................. 6, 26

*Ridgeway v. Ridgway*,
    454 U.S. 46 (1981).................................................................................... 6, 7

*Root v. Lake Shore & M.S. Ry. Co.*,
    105 U.S. 189 (1881) .................................................................................... 14

*Royal Indem. Co. v. United States*,
    313 U.S. 289 (1941)............................................................................. 20, 22

*Thrivent Fin. for Lutherans v. Strojny*,
    CIV.A. 11-11011-JLT, 2012 WL 3218526 (D. Mass. Aug. 9, 2012)................................ 5

*United States v. Project on Gov't Oversight*,
    572 F. Supp. 2d 73 (D.D.C. 2008) .............................................................. 28

*United States v. Rogan*,
    459 F. Supp. 2d 692 (N.D. Ill. 2006), *aff'd*, 517 F.3d 449 (7th Cir. 2008) ..................... 26

*Walker v. City of Lakewood*,
    272 F.3d 1114 (9th Cir. 2001) .................................................................... 12

*Young v. Godbe*,
    82 U.S. 562 (1872).................................................................................... 20

## Statutes

11 U.S.C. § 524................................................................................................ 24

26 U.S.C. § 408A............................................................................................. 27

26 U.S.C. § 530................................................................................................ 27

38 U.S.C. § 1966.............................................................................................. 1

38 U.S.C. § 1967........................................................................................... 7, 8

38 U.S.C. § 1969........................................................................................ 1, 6, 7

38 U.S.C. § 1970...................................................................................... 1, 7, 8, 27

38 U.S.C. § 1971 ................................................................................................................ 6, 7

38 U.S.C. § 1977 ................................................................................................................... 8

Public Law 109-452 .............................................................................................................. 7

**Rules**

Fed. R. Civ. P. 56 ............................................................................................................... 1, 5

**Secondary Authorities**

Bell & Parchomovsky, *A Theory of Property*, 90 Cornell L. Rev. 531 (2005) ........................... 13

*Black's Law Dictionary*
    (7th ed. 1999) .............................................................................................................. 19

*Dobbs Hornbook on Remedies § 3.6 (2d ed. 1993)* ............................................................. 20, 21

Douglas Laycock, *Modern American Remedies* 569–71 (3d ed. 2002) ...................................... 16

Restatement (Second) of Contracts § 354 (1981) ................................................................ 4, 20

Restatement (Third) of Restitution & Unjust Enrichment § 1 (2011) ......................... 3, 15, 16, 26

Restatement (Third) of Restitution & Unjust Enrichment § 3 (2011) ................... 3, 14, 17, 24, 27

Restatement (Third) of Restitution & Unjust Enrichment § 40 (2011) ........................................ 24

Restatement (Third) of Restitution & Unjust Enrichment § 41 (2011) ............... 17, 18, 19, 24, 27

Restatement (Third) of Restitution & Unjust Enrichment § 43 (2011) ........................................ 28

Restatement (Third) of Restitution & Unjust Enrichment § 51 (2011) ....................... 3, 18, 24, 27

Restatement (Third) of Restitution & Unjust Enrichment § 53 (2011) ............................. 4, 22, 24

W. Blackstone, *Commentaries*, Book 2, ch. 1 ........................................................................ 13

*Williston on Contracts* § 64:6 (4th ed. 2002 & Supp. 2012) ...................................................... 25

**Regulations**

38 C.F.R. § 9.5 ...................................................................................................................... 8

**Other Authorities**

Rep. No. 398, 1970 U.S.C.C.A.N. 3317, 3318 ........................................................................ 7

S. Rep. No. 398, 1970 U.S.C.C.A.N. 3317 ............................................................................... 6

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 56, and the Court's August 20, 2012 order, Plaintiffs respectfully submit this memorandum in support of their motion for summary judgment. Plaintiffs move for judgment that, as a matter of law, they have suffered cognizable legal injuries which are remediable at law and in equity irrespective of any individualized showing of monetary loss. When Prudential unilaterally retained and used SGLI beneficiaries' money without permission by setting up Alliance Accounts for its own profit, Plaintiffs were deprived of their statutory and legal rights to the funds. Such a deprivation of rights to property is a well-accepted, cognizable legal injury, long recognized as remediable under law and in equity.

At issue in this case is Prudential's unmet obligation to fulfill a mandate created by Congress for the special protection of servicemembers and their families. Congress authorized the Veterans Administration (the "VA") to select one or more insurance companies from whom to purchase group life insurance policies for servicemembers and veterans. 38 U.S.C. § 1966. The VA placed its trust solely in Prudential, giving it a monopoly on both providing life insurance to this guaranteed pool of insureds and administering the SGLI program. The insurance is paid for directly from the pay checks of servicemembers, less the costs of extra hazard traceable to their service in the military. 38 U.S.C. § 1969(a)(1). Those remaining extra hazard costs are paid for entirely with federal tax dollars. *Id.* § 1969(b).

In exchange for this unique monopoly, Congress mandated that the proceeds "shall be paid" out to the insured's beneficiary "either in a lump sum or in thirty-six equal monthly installments." 38 U.S.C. § 1970. Between its creation in 1965 and the end of May 1999, Prudential met its "lump sum" obligation by paying beneficiaries with one check for the full amount. (Decl. of Michael von Loewenfeldt I/S/O Plfs' Mot. for Summ. Judg. ["MVL Decl."]

Ex. 1.)  Unsatisfied with the profits generated by the statutorily mandated lump sum payment method, however, Prudential in June 1999 unilaterally changed the way it paid SGLI beneficiaries, to its own benefit.  Specifically, Prudential realized that it could make a larger profit if, instead of sending a check, it ███████████████████████████████████████" through the use of a so-called "retained asset account" and sent "checkbooks" rather than actually paying the beneficiaries their lump sums.  Over the next eleven years, Prudential captured and used for its own benefit some $██ billion in SGLI benefits that Congress intended to be paid to over 64,000 servicemembers and veterans' families, amassing a retained balance of at least ████ million by July 2010.  (MVL Decl. Ex. 2.)

Notably, Prudential treated its civilian life insurance beneficiaries much differently than its SGLI beneficiaries.  Prudential gave its civilian beneficiaries the choice to opt into an Alliance Account, actually explaining to them that Alliance Accounts are not the same as lump sum payments.  *E.g.*, *Phillips v. Prudential Ins. Co. of Am.*, No. 11-cv-0058-DRH, 2011 WL 5915148, at *1 (S.D. Ill. Nov. 28, 2011) (Prudential's claim form states beneficiary may choose five settlement options, including single sum, *or* an Alliance Account); *Garcia v. Prudential Life Ins. Co. of Am.*, No. 08-5756, 2009 WL 5206016, at *1-2 (D.N.J. Dec. 29, 2009) (not for publication) (Prudential gave beneficiaries a choice of six settlement options, including an Alliance Account).  Of course, purchasers of civilian life insurance also had the option, unlike SGLI insureds, to purchase their life insurance through another insurer in the open market.  Remarkably, in this case where Prudential is statutorily obligated to pay SGLI beneficiaries one lump sum, Prudential did not even give beneficiaries the same options it provides their civilian counterparts.  Prudential simply took the beneficiaries' money by setting up Alliance Accounts, and used that money to generate enormous profits for itself.

Thousands of SGLI beneficiaries between 1999 to 2009 were thereby deprived of their right to one lump sum payment—a right guaranteed to them by statute, by contract, common law, and as beneficiaries of a federal program that Prudential was charged with administering. This deprivation of right undeniably constitutes a cognizable legal injury.

Moreover, the Court may remedy this injury in two well-recognized ways: disgorgement of Prudential's profits gained from the deprivation of that right, and damages in the form of interest for the time during which Prudential wrongfully retained the Plaintiff class members' money. Under well-established common law principles set forth in the Restatement (Third) of Restitution and Unjust Enrichment (2011) [hereinafter "Rest. 3d Restitution"] and Restatement (Second) of Contracts (1981) [hereinafter "Rest. 2d Contracts"], both of these remedies are available at the election of the Plaintiffs without the need for any showing that each or any of them lost any profit opportunity or incurred any other quantifiable economic harm during the time that Prudential used their funds for its own benefit.

Disgorgement is the time-honored means of enforcing the bedrock principle that no wrongdoer may profit from his wrong. Rest. 3d Restitution, §§ 1, 3. As is unequivocally stated in the Restatement, if Prudential had no right to use Plaintiffs' money in the first place, it is accountable to them for all profits it made from investing that money – whether or not each Plaintiff suffered any individualized economic loss. Rest. 3d Restitution § 1 cmt. a & § 51 cmt. j. Under these well-established principles, Prudential cannot take money that did not belong to it, use that money to make a profit, and then keep that enormous profit simply because it eventually paid most of the money it originally owed the beneficiaries. *E.g.*, *In re Stix & Co., Inc.*, 27 B.R. 252, 258 (Bankr. E.D. Mo. 1983) (wrongdoer is liable for gambling winnings obtained through use of misappropriated funds).

In addition, both the failure to pay money on time and the use of another's money without permission are legal harms compensable by damages in the form of interest for the period of delay, also known as "moratory damages."  As shown below, moratory damages are available at an interest rate determined by the Court, based on simply (a) the amount of money detained and (b) the length of time payment was delayed.  Rest. 2d Contracts § 354(1). Whatever use Plaintiffs would have made with the money – had it been paid on time – has no bearing on the fact of delay in payment of monies owed, and thus no bearing on the calculation of moratory damages.  Moreover, in the absence of a statutory interest rate (and none exists here), the Court can and should set the rate of interest as equal to Prudential's profits from the investment of Plaintiffs' funds to avoid any unjust enrichment of Prudential from its misconduct. Rest. 3d Restitution § 53 cmt. 3.

Accordingly, pursuant to the authority discussed below, the Court should enter summary judgment in Plaintiffs' favor on the following issues.

## ISSUES FOR SUMMARY JUDGMENT

Plaintiffs move for summary judgment that, as a matter of law:

1. Plaintiffs have suffered legally cognizable injury;

2. Disgorgement is an appropriate remedy for Plaintiffs' breach of statute, unjust enrichment, and breach of fiduciary duty claims even absent a showing of individualized losses; and

3. Damages for delay are the appropriate remedy for Plaintiffs' breach of statute and breach of contract claims even absent a showing of individualized losses.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 56(a) allows either party to move for summary judgment on "part of each claim or defense." Fed. R. Civ. P. 56(a). Questions of law that do not depend on disputed facts are appropriate for resolution on summary judgment. *See B & T Masonry Const. Co., Inc. v. Pub. Serv. Mut. Ins. Co.*, 382 F.3d 36, 39 (1st Cir. 2004) (questions of law are properly resolved on summary judgment); *Jimenez v. Peninsular & Oriental Steam Navigation Co.*, 974 F.2d 221, 223 (1st Cir.1992); *see, e.g.*, *Kittansett Club v. Philadelphia Indem. Ins. Co.*, CIV.A. 11-11385-DJC, 2012 WL 3947954 at *1 (D. Mass. Sept. 10, 2012) ("The interpretation of an insurance policy is a question of law for the court and appropriately decided on summary judgment."); *Thrivent Fin. for Lutherans v. Strojny*, CIV.A. 11-11011-JLT, 2012 WL 3218526 at *4 (D. Mass. Aug. 9, 2012). Accordingly, the foregoing issues are properly presented to the Court for summary judgment. *See Polaroid Corp. v. Schuster's Exp., Inc.*, 484 F.2d 349, 350-51 (1st Cir. 1973); *see also Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 196 (2d Cir. 2003); *Dorris v. Absher*, 179 F.3d 420, 426-27 (6th Cir. 1999); *Oenga v. United States*, 91 Fed. Cl. 629, 641-43, 2010 WL 605175 (Fed. Cl. Feb. 12, 2010) (granting partial summary judgment on proper measure of damages).[1]

Because this case concerns the administration of a nationwide federal program and insurance policy issued to effectuate a Congressional intent to benefit servicemembers and their families, the claims in the case are governed by federal statutory and common law, not by the law of Massachusetts or any other individual state. *Rice v. Office of Servicemembers' Group*

---

[1]      Consistent with the Court's instruction that this motion be limited to the questions concerning cognizable injuries, Plaintiffs do not by this motion seek judgment as to whether Prudential's Alliance Account scheme was a violation of the SGLIA, a breach of the express and implied terms of the SGLI contract, an unjust enrichment, or a violation of a fiduciary duty Prudential owed to the SGLI beneficiaries.

*Life Ins.*, 260 F.3d 1240, 1246 (10th Cir. 2001); *Prudential Ins. Co. of Am. v. Athmer*, 178 F.3d 473, 475 (7th Cir. 1999).  In determining the elements of a federal common law claim, the federal courts rely on the American Law Institute's Restatements of the Law.  *See, e.g., Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135, 148 (2003); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 754 (1998); *McLemore v. Regions Bank*, 682 F.3d 414, 428-29 (6th Cir. 2012).

## STATEMENT OF UNDISPUTED EVIDENCE

Since 1965, the United States has granted Prudential the privilege of being the sole issuer of a group life insurance policy under the SGLIA.  (Answer, Docket # 20, ¶ 12.)  The SGLI is a "federally-sponsored" life insurance program operational under provisions of federal law. *Ridgeway v. Ridgway,* 454 U.S. 46, 53 (1981).  The life insurance policies for servicemembers were instituted to "meet the insurance needs of the "Vietnam-era servicemember." (MVL Decl. Ex. 3 p. 1.)  The programs were designed to protect servicemembers and "the members' designated beneficiaries" by providing them with government-subsidized life insurance policies. *Ridgway,* 454 U.S. at 53.

Prudential administers the group life insurance policy and the payment of life insurance proceeds in a "cooperative effort" with the VA.  (MVL Decl. Ex. 4 p. 11 ; S. Rep. No. 398, 1970 U.S.C.C.A.N. 3317, 3318.)  The SGLIA provides the VA the authority to set premiums based on actuarial requirements of the program beginning from "the lowest schedule of basic premium rates generally charged for new group of life insurance" and "readjusted in subsequent years based on the experience under the policy."  38 U.S.C. § 1971(a) and (b).  Servicemembers' premiums are deducted from their pay and remitted by the service branches to Prudential.  38 U.S.C. § 1969(a)(1).

In order to keep premiums "at a competitive level" the United States Government subsidizes the SGLI insurance policy. 38 U.S.C. § 1969(d)(2); *Ridgway*, 454 U.S. at 52.

Premiums are calculated by the VA and actuarial staff from Prudential. *Id.* § 1971(a). Pursuant to the SGLI Contract, the service branches, using public taxpayer dollars, reimburse Prudential for any insurance proceeds paid on deaths associated with "extra hazardous duty." 38 U.S.C. § 1969(b). Actuaries from the VA estimate the amount of "extra hazard" attributable to military service by assessing the number of hostile deaths suffered by servicemembers in excess of those suffered by the civilian population in the same time frame. Rep. No. 398, 1970 U.S.C.C.A.N. 3317, 3318. (MVL Decl. Ex. 3 p. 6.)

The uniformed services pay the cost of these excess claims to the VA. 38 U.S.C. § 1969(b). The VA then forwards these payments to Prudential. *Id.* The hazardous duty payments ensure Prudential incurs no additional risk during times of war, and are used to reduce premiums or maintain them at competitive levels on par with civilian life insurance. 38 U.S.C. § 1969(a)(1), (b); *Ridgway*, 454 U.S. at 50.

Built into the program are various mechanisms designed to protect servicemembers and beneficiaries of SGLI and VGLI. Servicemembers on active duty are automatically provided insurance coverage unless they specifically decline coverage in writing. 38 U.S.C. §§ 1967(a) and 1969. In 2006, the Department of Defense began paying insureds' premiums directly to Prudential for those serving in Operation Enduring Freedom and Operation Iraqi Freedom. Public Law 109-452. SGLI death benefits cannot escheat to a state. 38 U.S.C. § 1970(h). The benefits are not taxable. 38 U.S.C. § 1970(g). They are exempt from the claims of creditors. *Id.* SGLI benefits cannot be divided in a divorce or legal separation proceeding. *Ridgeway*, 454 U.S. at 59. Nor can SGLI life insurance proceeds be "liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary." *Id.* § 1970(g).

Upon the death of a servicemember, Prudential is responsible for payment of death benefits in the form selected by the insured or beneficiary. SGLI insureds and beneficiaries are statutorily entitled to elect payment of the SGLI insurance benefits "either in a lump sum or in thirty-six equal monthly installments." 38 U.S.C. § 1970(d). No other payment method is authorized by the SGLIA; nor is the insurer given the option to retain the life insurance benefits for its own use and profit. *Id.* The SGLIA mandates that the proceeds "shall be paid" "upon the establishment of a valid claim." 38 U.S.C. § 1970(a); *see also* 38 C.F.R. § 9.5 (benefits "shall be paid in accordance with provisions set forth in 38 U.S.C. 1970 . . . .").[2]

The terms of Prudential's group insurance contract ("the SGLI Contract") with the United States Department of Veterans Affairs ("the VA") relevant to this litigation have also remained substantively identical in every version of the SGLI Contract since 1965.[3] (Answer, Docket # 20, ¶ 6.) The SGLI contract provides that "The Insurance Company . . . **hereby agrees to pay benefits** in accordance with and subject to the terms of the Group Policy." (MVL Decl. Ex. 5 p. 774 (emphasis added).) It further provides that "[u]pon receipt by the Office [of Servicemembers Group Life Insurance ("OSGLI") – a division of Prudential] of due proof in

---

[2]     The SGLIA has been amended to expand coverage and benefits since its enactment in 1965. The expanded coverage includes insurance for veterans, enacted pursuant to the VGLIA, 38 U.S.C. § 1977. It also includes family coverage for servicemembers, sometimes referred to as "FSGLI" or "Family SGLI." 38 U.S.C. § 1967(a)(1)(ii). Because the relevant statutory provisions are identical for purposes of this lawsuit and the instant motion, this Memorandum will hereinafter use the terms "SGLI" and "SGLIA" to refer collectively to the life insurance programs for servicemembers, their families, and veterans (SGLI, FSGLI, and VGLI), as well as the acts authorizing each.

[3]     Although the language of the SGLI Contract identified herein did not change as the Contract was amended, the Contract's overall numbering scheme did. The article and section numbers identified herein refer to the January 1, 2007 version of the contract, attached to the Declaration of Michael von Loewenfeldt as Exhibit 5. The remaining contract versions can be found in the court file as Exhibits 19-22 to the Joint Declaration of plaintiffs' counsel filed on January 19, 2011 (Docket # 75).

writing that any person died while insured under the Group Policy . . . the Office **shall** . . . **pay the amount** for which such person is insured under the Group Policy." (MVL Decl. Ex. 5 p. 776 (emphasis added).) From 1965 through May 1999, Prudential understood its obligation under the Contract was to pay beneficiaries by issuing a lump sum check, and, consistent with this understanding, Prudential sent actual checks to beneficiaries entitled to payment by "lump sum" in the full amount owed plus any accrued interest as a result of payment being delayed. (MVL Decl. Ex. 1.) At no time before June 1999 did Prudential purport to meet its obligation to make a lump sum payment by retaining the beneficiaries' money for its own use and establishing a retained asset account such as an Alliance Account. (*Id.*)

In 1996, as discovery of Prudential's internal documents has now clearly revealed, Prudential contrived an alternative "settlement option" for life insurance benefits that Prudential refers to as an "Alliance Account." Generically known as a retained asset account, the Alliance Account is a device used by Prudential to maintain custody and use of beneficiaries' money as long as possible instead of paying the money in a lump sum as statutorily required. (MVL Decl. Exs. 6-7.) As Prudential internally describes it:



(MVL Decl. Ex. 6 p. 469.) Prudential created the Alliance Accounts after deciding internally that it needed a way to capture the money it was paying to beneficiaries. ████████████
████████████████████████████████████████████
████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████ (MVL Decl. Ex. 8.)

As of June 1999, Prudential unilaterally stopped its thirty-four year practice of sending death benefit checks to satisfy its SGLI lump sum payment obligation. (MVL Decl. Exs. 1, 9 p. 878.)  Instead of a check, SGLI beneficiaries whose insureds had designated lump sum payments received an Alliance Account "kit" purporting to describe the Alliance Account and including a book of drafts pursuant to the Alliance Account scheme described above.  (MVL Decl. Ex. 10 pp. 176:8-24; *e.g.*, MVL Decl. Ex. 11.)  The SGLI beneficiaries were not given an option of receiving a lump sum payment by check from Prudential, much less the option of choosing an Alliance Account.  Prudential just provided Alliance Accounts to anyone who was entitled to a lump sum check.  Prudential Vice President Fran Hackett admitted that ████████████████

████████████████████████████████████████████████████

████████████████████████████ (MVL Decl. Ex. 12 pp. 61:24-62:2, 85:12-86:7.)  Prudential Vice President Lesley Laurita admitted that money kept from beneficiaries is comingled into Prudential's general account. (MVL Decl. Ex. 13 ¶ 4.)

Thus, instead of being paid their lump sums, beneficiaries receiving an Alliance Account are sent a book of "drafts" – i.e., IOU's that appear to be checks – that can be used to start the process to gain access to money "from" the Alliance Account.  (*See, e.g.*, MVL Decl. Exs. 14 p. 212, Ex. 15.)  Five steps must transpire before any payment is made under the Alliance Account scheme.  First, the beneficiary makes a claim for death benefits.  Second, Prudential sends the beneficiary a "checkbook" of Alliance Account draft IOUs.  Third, the beneficiary writes a draft and uses it for payment or deposits it.  Fourth, the payee presents the draft to Prudential's Alliance Account processing company for payment.  Fifth, the processing company must

approve the draft for payment.  (MVL Decl. Ex. 16 pp. 90:10-91:19.)  Only after all of these

steps are complete does Prudential actually pay any of the money it was required to pay on a

lump sum immediately upon the claim.  (*Id.* pp. 89:17-21.)  The latter three steps are all hurdles

that beneficiaries have to surmount and, as Prudential knows, results in fewer beneficiaries

obtaining the funds to which they are entitled.  Prudential candidly admitted it wanted a ████

██████████████████████████ ███[4]  (MVL Decl. Ex. 17.)

As it was designed to do, Prudential's implementation of the retained asset account

scheme in connection with SGLI benefits allowed it to amass a huge pool of SGLI beneficiaries'

money in its General Account for its own financial use and benefit.  The beneficiaries SGLI

proceeds that were kept in Prudential's General Account were subject to levy by Prudential's

creditors.  These funds were not protected by FDIC insurance.  (MVL Decl. Ex. 3 p. 21.)  Based

on the Alliance Account transaction data Prudential has produced in discovery, from June 1999

through July 2010, Prudential kept over ████ billion that it was supposed to pay out in lump sum

---

[4]      Prudential was and is well-aware that consumers do not want these checkbooks; they
want lump sum checks.  As Prudential's internal Alliance Account planning documents
acknowledge, "'████████████████████████████████████████████
██████████████████ (MVL Decl. Ex. 18.)  Thus, Prudential had no interest in the Alliance
Accounts unless the accounts were established automatically (no choice for the beneficiary).
Numerous Prudential documents refer to the automatic nature of the account as ████" and
████████████████," and the absence of it as a █████████████ MVL Decl. Exs. 19-22.)
███████████████." (MVL Decl. Ex. 21.)  A recent GAO report reports
that "When consumers have the option to choose between RAAs and lump-sum check payments,
the overwhelming majority choose lump-sum check payments."  (MVL Decl. Ex. 23.)
Prudential further knew that, as a result of inertia, and the hurdles it has erected for mere access
to their own funds, many beneficiaries would leave money in the Alliance Accounts.  '████
████████████████████████████ (MVL Decl. Ex. 18.)  Prudential's file includes a
Best's Review article stating, in relevant part, that ████████████████████████
█████████████████'" (MVL Decl. Ex. 24.)  A December 31, 1997 update projected Alliance
Account retention of ████% of the money after one year. (MVL Decl. Ex. 25.)

benefits.  (MVL Decl. Ex. 2 ¶ 24.)  Prudential had substantial use of that money over time, with

the balance of retained benefits reaching over ███ million by July 31, 2010.  (*Id.*)

Each Plaintiff was a SGLI beneficiary as a result of the death of their husband, son, or

grandson.  (MVL Decl. Exs. 26-35.)  Each was entitled to a lump sum payment of SGLI benefits.

(*Id.*)  Instead, Prudential gave each an Alliance Account. (*Id.*)  Thus, none received any SGLI

benefits from Prudential unless and until they essentially made a second request for those funds

by writing checks on the Alliance Account.

## ARGUMENT

### A.    Plaintiffs Suffered a Cognizable Legal Injury.

Plaintiffs suffered a cognizable legal injury as a result of Prudential's impermissible

actions.  This entire case arises from Prudential's deliberate misappropriation of Plaintiffs'

insurance proceeds so that Prudential could capture those proceeds, invest them, and profit by

their investment between the time the proceeds were required to be paid and the time Prudential

paid some or all of them to SGLI beneficiaries upon use of Alliance Account "checks."  Indeed,

Plaintiffs have suffered actual and legally recognized injuries in several ways.

To begin with, Prudential's inappropriate actions caused a legally cognizable injury to

Plaintiffs in the form of delay. A delay in payment is undoubtedly a legally cognizable injury.

*See Arthur D. Little, Inc. v. Dooyang Corp.*, 147 F.3d 47, 57 (1st Cir. 1998) (rejecting argument

that delay in payment was not an actual injury); *Walker v. City of Lakewood*, 272 F.3d 1114,

1124 (9th Cir. 2001) (delayed payment causes actual injury and provides standing to sue).

In this case, Plaintiffs and each other member of the proposed Class suffered a delay in

receiving his or her benefits when, instead of paying the benefits in compliance with its statutory

and contractual duties, Prudential sent them an Alliance Account "checkbook," requiring them to

make a second request for payment before actually receiving any of the benefits to which they were entitled.

Furthermore, Prudential not only delayed paying Plaintiffs their benefits, but actively used those funds to enrich itself without the owners' permission. Such conduct impinges upon the most basic of property rights – the right to control use of one's own property – and causes an injury by impediment to or removal of that right. Violation of that right is an injury at law. Indeed, "the loss or diminution of a right or remedy constitutes injury or damage." *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison*, 958 P.2d 1062, 1065 (Cal. 1998).

As the Supreme Court has stated, since the time of English common law it has been recognized that "[o]ne of the main rights attaching to property is the right to exclude others. . ." *Rakas v. Illinois*, 439 U.S. 128, 143 n.12 (1978) (citing W. Blackstone, *Commentaries*, Book 2, ch. 1) (noting that the same rule applies for both real and personal property); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1158 n.5 (6th Cir. 1978) (personal property) ("[t]he right to exclude others is the essence of the human right called 'property.'"); Bell & Parchomovsky, *A Theory of Property*, 90 Cornell L. Rev. 531, 597 (2005) ("The right to exclude others from using . . . one's property is generally seen as one of the most important rights in property."). "The primary justification for the preeminence of the right to exclude is that it indirectly confers upon the property holder the right to determine the price for using the property and to 'hold out' for greater compensation where others seek entry." Bell & Parchomovsky, *supra*, at 598.

When Prudential sent Plaintiffs and other SGLI beneficiaries Alliance Account checkbooks instead of lump sum payments, Prudential's whole purpose was to automatically capture and use billions of dollars that Prudential's own research showed would otherwise go to

numerous banks across the country, money market funds, or other money-management

competitors.  (*See* MVL Decl. Exs. 19-22.)  Such actions served to deprive Plaintiffs of their

fundamental right to control their own property, and therefore caused legally cognizable damage

irrespective of what Plaintiffs would have done with their money.[5]

Furthermore, Plaintiffs suffered an inherent injury due to the simple fact that Prudential

broke the law.  A fundamental principle of our legal system is that Prudential may not profit

from its intentional misconduct. "[N]o man may take advantage of his own wrong.  Deeply

rooted in our jurisprudence, this principle has been applied in many diverse classes of cases by

both law and equity courts. . . "  *Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 232-33

(1959); *see also Root v. Lake Shore & M.S. Ry. Co.*, 105 U.S. 189, 207 (1881) (equity requires a

wrongdoer to refund illegal profits, "as it would be inequitable that he should make a profit out

of his own wrong"); Rest. 3d Restitution § 3 ("A person is not permitted to profit by his

wrongdoing.").  It is an equally established principle that courts can and should apply some

remedy for every violation of law.  "'Difficulty of ascertainment is no longer confused with right

of recovery' for a proven invasion of the plaintiff's rights." *Bigelow v. RKO Radio Pictures*, 327

U.S. 251, 265-66 (1946) (recognizing "[t]he constant tendency of the courts is to find some way

in which damages can be awarded where a wrong has been done"); *accord  Parker v. OSGLI*, 91

F. Supp. 2d 820, 825 (E.D. Pa. 2000) ("Surely Congress did not intend to extend the salutary

---

[5]      As Dobbs explains, "[c]ourts and lawyers often use the term damages to mean either the
harm or loss suffered by the plaintiff or the legal remedy for that loss. Sometimes this usage
leads to confusion. The amount of harm may be either more or less than the amount of damages.
For example, suppose D enters on P's land and spends the weekend there, but without causing
harm: observers could neither see nor measure a loss in value to P. Although P has suffered no
harm, she may recover damages." Dan B. Dobbs, *Dobbs Hornbook on Remedies* § 3.1 (2d ed.
1993) (emphasis added) [hereinafter "*Dobbs on Remedies*"].

benefits under the SGLIA and then deny a federal remedy when the benefits were wrongfully withheld.").

Plaintiffs' lawsuit is fully consistent with this authority, and the bedrock principles of our justice system confirm that Plaintiffs have been injured by the commission of a statutory violation against them.  Plaintiffs have also suffered legally cognizable injuries through the invasion of their property rights and in the form of delay.  These injuries need not be individually quantified in order for recovery to be permissible, as discussed in detail below.

**B.      Plaintiffs Seek Summary Judgment Affirming that Disgorgement Is An Appropriate Remedy, Irrespective of Individualized Loss.**

Plaintiffs have established that they suffered legally cognizable injuries. Plaintiffs now move for summary judgment to affirm that disgorgement is an appropriate remedy for Plaintiffs' breach of statute, unjust enrichment, and breach of fiduciary duty claims, and that disgorgement requires no demonstration of individualized losses that could impede class certification.

As the Restatement explains, it is well-settled that liability in restitution[6] **does not** depend on a showing of loss by the claimant:

> Liability in restitution derives from the receipt of a benefit whose retention without payment would result in the unjust enrichment of the defendant at the expense of the claimant. . . . [T]he consecrated formula "at the expense of another" can also mean "in violation of the other's legally protected rights," **without the need to show that the claimant has suffered a loss**. . . . [T]here are cases in which the remedy for unjust enrichment gives the plaintiff something – typically, the defendant's wrongful gain – that the plaintiff did not previously possess.

Rest. 3d Restitution, § 1 cmt. a (emphasis added).

---

[6]      The Restatement uses the term "restitution" to include disgorgement of profits.  Rest. 3d Restitution § 1cmt. c.

Simply put, "[a] person is not permitted to profit by his own wrong."  Rest. 3d Restitution § 1.  This principle "marks one of the cornerstones of the law of restitution and unjust enrichment."  *Id.* cmt. a.  "Salient examples include cases in which a property owner may have suffered no quantifiable injury from the defendant's unlawful interference.  Restitution in such cases protects the owner's right to insist that any use of property by another – **whether or not it diminishes the property's value** – be made with the owner's consent and on the owner's terms."  *Id.* cmt. b (emphasis added).  Thus, "it is clear not only that there can be restitution of wrongful gain exceeding the plaintiff's loss, but that there can be restitution of wrongful gain in cases where the plaintiff has suffered an interference with protected interests but **no measurable loss whatsoever**."  *Id.* note a (emphasis added).

Numerous common law cases recognize that a wrongdoer is required to disgorge ill-gotten gains irrespective of whether the plaintiff suffered a monetary loss.  "Restitution . . . may be measured by the defendant's gain and is therefore appropriate even when the plaintiff has suffered no demonstrable harm."  *Nichols v. Minnick*, 885 N.E.2d 1, 4 (Ind. 2008); *Moore & Co. v. T–A–L–L, Inc.*, 792 P.2d 794, 799–800 (Colo. 1990) (fact that seller sustained no actual damages does not exonerate broker); *Miller v. Berkoski*, 297 N.W.2d 334, 341 (Iowa 1980) (disgorgement does not depend upon harm to principal); *Goldberg Realty Group v. Weinstein*, 669 A.2d 187, 190 (Me. 1996) (same); *Quechee Lakes Rental Corp. v. Boggess*, 158 Vt. 258, 608 A.2d 39, 43 (1992) (same).  A good example is *Olwell v. Nye & Nissen Co.*, 173 P.2d 652 (Wash. 1946), discussed by Professor Laycock as an illustration of the basic principle of disgorging profits.  Douglas Laycock, *Modern American Remedies* 569–71 (3d ed. 2002).  In that case, the plaintiff sold to the defendant an interest in plaintiff's company, specifically retaining in the contract ownership and control of an egg-washing machine used in the industry. *Olwell*, 173

P.2d at 652-53.  Plaintiff intended to store the machine, but defendant had the machine removed and put to use, reaping profits from the use of the machine.  *Id.*  When plaintiff discovered defendant's extra-contractual use of and profit from his machine, plaintiff sued.  Even though plaintiff did not intend to use the machine, the court held that plaintiff may recover the profit derived from the use of the machine, reasoning:

> It is also necessary to show that while [defendant] benefited from its use of the egg-washing machine, [plaintiff] thereby incurred a loss. . . . However plausible, **the [defendant] cannot be heard to say that its wrongful invasion of the [plaintiff]'s property right to exclusive use is not a loss compensable in law**. To hold otherwise would be subversive of all property rights, since its use was admittedly wrongful and without claim of right.

*Id.* at 653-54 (emphasis added).

The Restatement also emphasizes that the common law requires full disgorgement of any profits made by the wrongdoer:

> Restitution requires **full disgorgement of profit** by a conscious wrongdoer . . . because any lesser liability would provide an inadequate incentive to lawful behavior.  . . . If a conscious wrongdoer were able to make a profitable unauthorized use of the claimant's property, then pay only the objective value of the assets taken or the harm inflicted, the anomalous result would be to legitimate a kind of private eminent domain (in favor of a wrongdoer) and to subject the claimant to a forced exchange.  The law of restitution responds to this anomaly by making the wrongdoer liable to disgorge profits wrongfully obtained, whenever such profits exceed recoverable damages.

Rest. 3d Restitution § 3 cmt. c (emphasis added).[7]

As directly applicable to this case, "[a] person who obtains a benefit by misappropriating financial assets ... is liable in restitution to the victim of the wrong."  Rest. 3d Restitution § 41.

---

[7]     As the Supreme Court has explained, "[f]uture compliance may be more definitely assured if one is compelled to restore one's illegal gains. . ." *Porter v. Warner Holding Co.*, 328 U.S. 395, 400 (1946).

"Conscious misappropriation of financial assets leads to liability by a disgorgement measure, including consequential gains.  In the present context, the consequential gains for which the conscious wrongdoer is liable are usually derived from a profitable investment of misappropriated finds."  *Id.* cmt. b; *see also* Rest. 3d Restitution § 51(5)(b) ("A conscious wrongdoer or a defaulting fiduciary who makes unauthorized investments of the claimant's assets is accountable for profits and liable for losses."); *id.* § 41 cmt. d ("A conscious wrongdoer who invests misappropriated funds takes the risk of losses and is liable for profits. . . . [I]f the misappropriated funds have been profitably invested, **the claimant may recover more than the loss**.") (emphasis added); *id.* § 51 cmt. j ("[T]he claimant is free to pursue the most advantageous remedy in light of the outcome. . . . A defendant who has made a profitable investment of funds acquired in breach of duty may not set off losses from other unauthorized investments, where the separate transactions may be distinguished.").

This authority is on all fours with the matter at bar.  This case arises from Prudential's deliberate misappropriation of Plaintiffs' insurance proceeds so that it could invest the proceeds and profit off of them between the time the proceeds were required to be paid and the time Prudential later paid some or all of the SGLI benefits to SGLI beneficiaries.  As the Restatement explains, Plaintiffs and the other beneficiaries are entitled to disgorgement of all profits Prudential made with their money, whether or not they suffered an equal loss.

Thus, no individual monetary loss is required in order to obtain disgorgement of ill-gotten gain. Plaintiffs are entitled to all profits from the wrongful use of their property even if they suffered no quantifiable monetary losses.  Because it matters not what these Plaintiffs would have done with their money if Prudential had paid it instead of misappropriating it through the Alliance Account scheme, there is no need or even relevance to the disgorgement claim for any

inquiry into each Plaintiff's hypothetical, "but for" conduct.  If Prudential had no right to keep

and use this money, Prudential is required to disgorge any profits it made investing the money

for its own gain without reference to the use any SGLI beneficiary may have made of the lump

sum SGLI benefits.  Rest. 3d Restitution § 41.

### C.   Plaintiffs Seek Summary Judgment Affirming That Moratory Damages Are An Appropriate Remedy, Irrespective of Individualized Loss.

Plaintiffs also move for summary judgment to affirm that moratory damages are an

appropriate remedy for Plaintiffs' breach of statute[8] and breach of contract claims, and that

moratory damages also require no demonstration of individualized losses that could impede class

certification.  As stated above, there can be no doubt that Plaintiffs in this case have suffered a

legally cognizable injury at least in the form of delay in receipt of funds owed and use of their

property without permission.  *See also Prudential Ins. Co. of Am. v. Armwood*, 362 F. Supp.

1328, 1330-31 (E.D.N.Y. 1973) (requiring Prudential to pay interest for delayed payment of

SGLI benefits) ("Quite clearly Congress intended the benefits of SGLI policies to be paid out

promptly and not held by the insuring company for more than four and a half years as has been

the case here. . .").

The traditional common law legal remedy for a delay in payment or other improper use

of Plaintiffs' money is moratory damages (i.e., interest as damages).[9]  "Interest is the

---

[8]     As discussed further below, Plaintiffs are entitled to select between the greater of disgorgement and moratory damages for the statutory violation claim.

[9]     The terms "moratory damages" and "moratory interest" are used in both civil and common law cases to describe prejudgment interest awarded as a measure of general damages for delay in paying an obligation.  *Black's Law Dictionary* at 395 (7th ed. 1999) (moratory damages).  *See, e.g.*, *Red Star Towing & Transp. Co., Inc. v. Cargo Ship Ming Giant*, 563 F. Supp. 224, 226-27 (S.D.N.Y. 1983) ("[p]rejudgment interest divides into two primary categories, one often called moratory interest (or interest on the claim), the other being interest on the recovery.");  *Farmers Reservoir & Irr. Co. v. City of Golden*, 113 P.3d 119, 132-33 (Colo. 2005)

compensation allowed by law . . . for use or forbearance of money, or as damages for its

detention." *Brown v. Hiatts*, 82 U.S. 177, 185 (1873). "Just as rent is money paid for the use of

property, interest is money paid for the use of other money." *Dobbs on Remedies* § 3.6; *see also*

*Nashua & Lowell R. Corp. v. Boston & Lowell R. Corp.*, 61 F. 237, 251 (1st Cir. 1894)

(recognizing general common law principle of moratory damages as necessary to avoid violating

"in behalf of the defendant, a fundamental maxim of equity, by allowing him to take advantage

of his own wrong."); *Young v. Godbe,* 82 U.S. 562, 565 (1872) (holding that "[i]f a debt ought to

be paid at a particular time, and is not, owing to the default of the debtor, the creditor is entitled

to interest from that time by way of **compensation for the delay in payment**") (emphasis

added); *Royal Indem. Co. v. United States*, 313 U.S. 289, 295-96 (1941) ("A suit upon a

contractual obligation to pay money at a fixed or ascertainable time is a suit to recover damage

for its breach, including both the principal amount and interest by way of damage for delay in

payment of the principal after the due date.").   This right to interest as compensation for injury

in the form of delayed payment is explicitly confirmed in the Restatement (Second) of Contracts:

> If the breach consists of a failure to pay a definite sum in money or
> to render a performance with fixed or ascertainable monetary
> value, interest is recoverable from the time for performance on the
> amount due ...

Rest. 2d Contracts § 354(1).

---

("At common law, the doctrine of moratory interest relied on the concept of interest as damages
and unjust enrichment as a basis for awarding common law interest rather than statutory interest.
Thus, this prejudgment interest was in the nature of another item of compensatory damages.")
(citations omitted);  *Parker v. Brinson Const. Co.*, 78 So. 2d 873, 874 (Fla. 1955) ("interest is
often allowed by way of damages, such interest being defined as moratory interest"); *Nashua &
Lowell R. Corp. v. Boston & Lowell R. Corp.*, 61 F. 237, 246-47 (1st Cir. 1894) ("if allowed,
[interest] must be in the way of damages for delay, or, as it is frequently described, as moratory
interest. … There has been, in the main, a steady advance of the state of the law from a
disposition to allow no interest, through the stages of considering it as a matter of discretion for
either the court or the jury, towards a rule of legal right.").  The same concept is discussed as
"interest as damages" in the Rest. 2d Contracts § 354.

Because the delay in payment is itself a legal injury, upon establishing liability Plaintiffs are entitled to moratory damages whether or not they can show that the delay caused monetary loss: "Interest is awarded **whether or not the plaintiff has realized any losses** as a result of the delay in payment. . . . In this respect the interest recovery, when available, is treated like market or general damages." *Dobbs on Remedies* § 3.6 (emphasis added); *see also Grynberg v. Roberts*, 698 P.2d 430, 433 (N.M. 1985) ("The common law rule of prejudgment interest … does not depend on extraneous factors such as whether the injured party borrowed to cover the indebtedness; or whether or not interest was paid on money borrowed to cover the breaching party's debt.").

Put another way, the injury occurred and the remedy exists regardless of what Plaintiffs might have done with a check had Prudential paid on time, or what each of their reasons were for not drawing on the Alliance Account for any particular period. Indeed, a recent analogous case expressly holds that "the Plaintiffs' varying motivations for leaving money in these accounts are not relevant to [the insurer's] liability or to the calculation of damages." *Merrimon v. Unum Life Ins. Co. of Am.*, 845 F. Supp. 2d 310, 325 (D. Me. 2012) (certifying class of beneficiaries who received retained asset accounts instead of payments).

It is not enough, of course, for Prudential to have simply paid whatever trivial amount of interest it felt like paying. When moratory damages are owed for delay or improper use of another's money, and there is no governing statute, the appropriate interest rate is determined by the Court. "[I]n the absence of any controlling statutory regulation the trial court is as competent to determine the amount of interest for delay as any other item of damage. . . . In the absence of an applicable federal statute it is for the federal courts to determine, according to their own criteria, the appropriate measure of damage, expressed in terms of interest, for non-payment of

the amount found to be due." *Royal Indem. Co.*, 313 U.S. at 296; *see also Davis Cattle Co., Inc. v. Great Western Sugar Co.,* 393 F. Supp. 1165, 1195 (D. Colo. 1975) (awarding moratory damages, in the absence of a statutory rate, based on the benefit to defendant of wrongfully withholding payment of funds: "[t]he benefit to defendant was the 11.5% interest it saved, and, since benefit to the guilty party is the measure of damage…plaintiff and the members of the class are entitled to have added in the judgment 11.5%."); *Ford Motor Co. v. Transp. Indem. Co.*, 45 B.R. 843, 847 (E.D. Mich. 1984) (awarding interest based on defendant's "use of funds that it should have paid to [plaintiff]… [defendant] has presumably earned interest or made other use of those funds during that time").

Here, too, the Restatement provides critical guidance to the Court in applying this common law rule – in order to avoid Prudential benefitting from its own wrongdoing, the interest rate applied should be no less than the profits made by Prudential through use of the funds. "Unless a different rate of prejudgment interest is specified by statute, the rationale of preventing unjust enrichment suggests that **the court should apply the rate that most closely reflects the value to the defendant of the interim use of the claimant's funds**." Rest. 3d Restitution § 53, cmt. 3 (emphasis added). Prudential's paltry interest payments are at best a matter of mitigation of damages, for which Prudential will be credited; but they do not eliminate as a matter of law the underlying injury (delay in payment) or the underlying remedy (moratory damages).

Accordingly, Prudential's wrongful delay in payment, and resulting retention and use of Plaintiffs' monies constitutes an actual legal injury that is compensable via moratory damages irrespective of what Plaintiffs would have done with a timely payment.

**D.     Analysis Of Each Of Plaintiffs' Claims Further Demonstrates That Summary Judgment Is Appropriate.**

For each of Plaintiffs' individual claims, the appropriate remedy is either disgorgement or moratory damages.  Therefore, an analysis of each claim demonstrates the appropriateness for summary judgment on the two remedies, without the need for any individualized damages analysis.

**1.     Violation of 38 U.S.C. § 1970(d)**

Plaintiffs' first cause of action is that Prudential violated its statutory obligation to pay the full amount of all death benefits owed to the Plaintiffs and other beneficiaries when instead it kept the beneficiaries' money through the retained asset accounts.  Plaintiffs seek damages, an order requiring Prudential to disgorge all profits made by Prudential using class members' funds, and an injunction requiring Prudential to disgorge the SGLI beneficiaries' money that it is currently holding.  (Consolidated Amended Complaint ¶¶ 71-73.)

This Court unquestionably has access to the full panoply of legal and equitable remedies to address federal statutory violations.  "[W]here federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief.  And it is also well settled that . . . federal courts may use any available remedy to make good the wrong done."  *Bell v. Hood*, 327 U.S. 678, 684 (1946); *see also Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60, 66 (1992) (when enforcing an implied private right of action for a statutory violation, the Court "presume[s] the availability of all appropriate remedies unless Congress has expressly indicated otherwise") (citations omitted).  In *Janigan v. Taylor*, 344 F.2d 781 (1st Cir. 1965), the First Circuit applied this principle to order disgorgement of the profits a defendant generated through its statutory violations.  *Id.* at 786.  In doing so, the First Circuit cited to the 1937 Restatement (First) of Restitution.  *Id.*  As discussed

above, the Rest. 3d Restitution clearly and repeatedly reaffirms that the common law does not

allow a wrongdoer to keep the benefits of his wrong.  Rest. 3d Restitution §§ 3, 40, 41, 51, 53;

*see also Malone v. Norwest Fin. Cal., Inc.*, 245 B.R. 389, 395 (E.D. Cal. 2000) (holding

rescission, disgorgement, and punitive damages appropriate remedies for violations of 11 U.S.C.

§ 524).

In addition to their right to disgorgement, the delay suffered by Plaintiffs in receiving

their funds constitutes a legal injury compensable by moratory damages.  Plaintiffs have the right

to elect the greater of these two remedies for breach of statute.  Rest. 3d Restitution §§ 3, 41, 51

cmt. j; *see also Parke v. First Reliance Standard Life Ins. Co.*, 368 F.3d 999, 1009 (8th Cir.

2004) (plaintiff may elect to pursue prejudgment interest rather than disgorgement); *Guyana Tel.

& Tel. Co., Ltd. v. Melbourne Int'l Communications, Ltd.*, 329 F.3d 1241, 1249 n.8  (11th Cir.

2003) ("[T]he law appears to allow the plaintiff  . . . to choose not only between loss-based and

gain-based awards but also, within the gain-based category, between the higher of the

restitutionary award and the disgorgement award.").   Accordingly, Plaintiffs can proceed with

their statutory claim without proving what any of them would have done had Prudential paid

them when it was statutorily required to do so.  They will be, therefore, entitled to either

disgorgement or moratory damages under the law upon establishing liability.[10]

---

[10]     At an absolute minimum, nominal damages are available for the violation of a federal
statutory right even if (contrary to the foregoing) the SGLI beneficiaries could be said to have
suffered no harm at all by Prudential's misappropriation and use of their insurance benefits.  *See,
e.g., Cupid v. Local 116 of the International Union of Electronic, Electrical, Salaried, Machine
and Furniture Workers*, No. Civ. A No. 91-1809, 1993 WL 21794, at * 8-10 (E.D. Pa. Jan. 27,
1993) (nominal damages are appropriate in cases brought under federal Labor Management
Reporting and Disclosure Act).  Such nominal damages are recoverable not only by the class
representatives, but by each member of the class.  *Cummings v. Connell*, 402 F.3d 936, 943-44
(9th Cir. 2005) (in a certified class action, the named plaintiff(s) and each class member is
entitled to nominal damages); *Harrington v. City of Albuquerque*, 392 F. Supp. 2d 1237, 1241
(D. N. M. 2004) (same).

### 2.      Breach of Contract

Plaintiffs' second and third causes of action are for breach of the SGLI insurance contract and breach of the implied covenant of good faith and fair dealing therein.  The remedies sought on these contract claims are likewise available without any showing of individualized financial loss.

As discussed above, delay in payment is a long-recognized contractual injury that is remedied by moratory damages without the need for a showing that any consequential monetary loss occurred as a result of the delay.  Rest. 2d Contracts § 354(1).  Additionally, the breach of a contractual obligation is cognizable even in the absence of demonstrable monetary damage.  "An unexcused failure to perform a contract is a legal wrong.  An action will therefore lie for the breach although it causes no injury."  24 Richard A. Lord, *Williston on Contracts* § 64:6 (4th ed. 2002 & Supp. 2012); *Flynn v. AK Peters, Ltd.*, 377 F.3d 13, 23 (1st Cir. 2004).[11]

Thus, on the contract claims, Plaintiffs are entitled to seek remedies without regard to what their individual financial decisions would have been Prudential had met its contractual obligations.

### 3.      Unjust Enrichment

Plaintiffs' fourth cause of action is for money had and received, which is a form of unjust enrichment.  The long-accepted remedy for unjust enrichment is disgorgement.  *McIntosh v. Gilley*, No. 10-119 (CKK), 2010 WL 4872958 at *3 (D.D.C. Nov. 30, 2010) ("Disgorgement of

---

[11]      Even if, *arguendo*, the remedies discussed above were not available, on these claims too Plaintiffs retain the right to nominal damages.  *Carey v. Piphus*, 435 U.S. 257, 266 (1978); *MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 664 (Tex. 2009) ("We are hardly alone in recognizing nominal damages for breach of contract; so do the First and Second Restatements, Williston, Corbin, and Black's Law Dictionary").  Prudential has previously argued, without citation of authority, that Plaintiffs cannot recover nominal damages unless that is the only remedy they seek in the first place.  Plaintiffs can locate no case or secondary authority supporting such an argument.

profits is a well-recognized remedy for unjust enrichment."); *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 755 (8th Cir. 2006) ("Unjust enrichment requires restitution, which measures the remedy by the gain obtained by the defendant, and seeks disgorgement of that gain."); *Eckard Brandes, Inc. v. Riley*, 338 F.3d 1082, 1088 (9th Cir. 2003) ("It is widely recognized that disgorgement is a remedy intended to prevent a wrongdoer from unjust enrichment.").

The only three elements of this common law claim are:  "(1) defendant received money belonging to plaintiff; (2) defendant benefitted from the receipt of money; and (3) under principles of equity and good conscience, defendant should not be permitted to keep the money." *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat. Ass'n*, 731 F.2d 112, 125 (2d Cir.1984).  There is no requirement to show any financial detriment on the part of the plaintiff, and thus no need for such proof by any Plaintiff under the federal common law claim alleged here.  *See United States v. Rogan*, 459 F. Supp. 2d 692, 728 (N.D. Ill. 2006), *aff'd*, 517 F.3d 449 (7th Cir. 2008) ("The elements of a federal common law claim of unjust enrichment are: (1) the Government had a reasonable expectation of payment, (2) Rogan should reasonably have expected to pay, or (3) 'society's reasonable expectations of person and property would be defeated by nonpayment.'") (*citing Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985, 993-94 (4th Cir.1990)).[12]

---

[12]     In its August 20, 2012 Order, the Court cites Massachusetts law as requiring "unjust detriment" to the plaintiff to establish a claim of unjust enrichment.  Plaintiffs' claim is, however, governed by federal law, not Massachusetts law.  *Rice*, 260 F.3d at 1246; *Prudential Ins. Co. of Am.*, 178 F.3d at 475.  As discussed above, cases applying the federal common law do not include any such requirement.  Moreover, as explained by the Restatement, **any** violation of the Plaintiffs' rights is a sufficient "detriment" to trigger the right to restitution/disgorgement irrespective of whether the Plaintiff lost money.  Rest. 3d Restitution § 1 cmt. a.  (*See* pages 15-18, *supra*.)

Here, Prudential unilaterally took and used Plaintiffs' money in violation of a federal statute and its contractual obligations, and unjustly enriched itself with those funds. It cannot in equity be allowed to keep the fruits of its misconduct, whether or not each Plaintiff would have made more money had Prudential not engaged in its misconduct. Rest. 3d Restitution §§ 3, 41, 51. Thus, disgorgement is warranted without any individualized inquiry into what any Plaintiff lost or would have done had Prudential made the lump sum payment.

### 4.   Breach of Fiduciary Duty

Finally, Plaintiffs' seventh cause of action is for breach of fiduciary duty. From 1965 to the present, Prudential has administered a federal program of life insurance for the special protection of servicemembers and their families. Under that program, SGLI beneficiaries are entitled to a number of protections not applicable to ordinary insurance (for example, non-attachability by creditors and non-escheatment, *see* 38 U.S.C. § 1970(g) & (h)), as well as special eligibility for tax free investment in retirement and educational accounts. 26 U.S.C. § 408A(e)(2); 26 U.S.C. § 530(d)(9). All of these are designed to fulfill the unique national interest and obligation to protect the beneficiaries of our nation's servicemembers, a national obligation recognized since President Lincoln's second inaugural address.

As the sole chosen administrator of this federal program since 1965, Prudential is charged with a fiduciary duty to the beneficiaries of this program of ensuring the benefits granted to them by Congress are protected. The duty to administer a federal program to meet Congressional objectives is separate and apart from Prudential's ordinary duty as an insurer to the SGLI beneficiaries. Instead of protecting the SGLI funds from misappropriation or risk of loss, Prudential "captured" these funds for Prudential's own benefit, and did so without disclosing to the beneficiaries the truth about Alliance Accounts. Therefore, the evidence at trial will show

that Prudential breached its fiduciary duties to the Plaintiffs' Class.  Disgorgement is the well-recognized remedy for such a breach.

As a fiduciary of the beneficiaries, Prudential would have to return any profits it made thereby to Plaintiffs.  "A person who obtains a benefit in breach of a fiduciary duty . . . is liable in restitution to the person to whom the duty is owed."  Rest. 3d Restitution § 43.  "If restitution takes the form of a liability to disgorge profits, a disloyal fiduciary – without regard to notice or fault – is treated as a conscious wrongdoer."  Rest. 3d Restitution § 43 cmt. a; *see also United States v. Project on Gov't Oversight*, 572 F. Supp. 2d 73, 76-77 (D.D.C. 2008) ("The remedy for a fiduciary duty violation is disgorgement."); *LiButti v. United States*, 107 F.3d 110, 125 (2d Cir. 1997) ("It is universally understood that "where a constructive trust has invested [wrongfully acquired] funds or has purchased other property [with wrongfully acquired funds], the [party for whose benefit a constructive trust has been imposed] can follow it wherever it can be traced."). Therefore, the case law makes clear that if Prudential violated a fiduciary duty, Plaintiffs are entitled to recovery of all profits made by Prudential irrespective of what Plaintiffs would have done with the money if Prudential had honored that duty.

## **CONCLUSION**

For each and all of the forgoing reasons, the Court should enter summary judgment in Plaintiffs' favor ruling, as a matter of law, that:

1.      Plaintiffs have suffered legally cognizable injury;

2.      Disgorgement is an appropriate remedy for Plaintiffs' breach of statute, unjust enrichment, and breach of fiduciary duty claims even absent a showing of individualized losses; and

3.      Delay damages are an appropriate remedy for Plaintiffs' breach of statute and breach of contract claims even absent a showing of individualized losses.

Respectfully submitted on October 5, 2012 by *Interim Co-lead Class Counsel*

| | | |
|---|---|---|
| /s/ Michael von Loewenfeldt | /s/ Daniel D. King | /s/ Christopher M. Burke |
| Michael von Loewenfeldt | Daniel D. King | Christopher M. Burke |
| KERR & WAGSTAFFE LLP | THE DANIEL D. KING | SCOTT+SCOTT LLP |
| 100 Spear Street, 18th Floor | LAW FIRM, PLLC | 707 Broadway, Suite 1000 |
| San Francisco, CA 94105 | 401 Congress, Suite 1540 | San Diego, CA 92101 |
| Tel: (415) 371-8500 | Austin, TX 78701 | Tel: (619) 233-4565 |
| Fax: (415) 371-0500 | Tel: (512) 687-6278 | Fax: (619) 233-0508 |
| | Fax: (512) 351-9757 | |

## <u>CERTIFICATE OF PERMISSION TO SIGN</u>

      I hereby certify that I have permission of each of the other signatories to this document to sign their names electronically and file this document on their behalves.


Dated: October 4, 2012             /s/ Michael von Loewenfeldt

                                           Michael von Loewenfeldt (*pro hac vice*)
                                           **KERR & WAGSTAFFE LLP**
                                           100 Spear Street, 18th Floor
                                           San Francisco, CA 94105-1528
                                           Tel: 415/371-8500
                                           415/371-0500 (fax)

## <u>CERTIFICATE OF SERVICE</u>

I, Michael von Loewenfeldt, hereby certify that this document filed through the ECF system will be sent to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 5, 2012.

/s/  <u>Michael von Loewenfeldt</u>