**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

In re Prudential Insurance Company of
America SGLI/VGLI Contract Litigation

Master Case No. 3:11-md-02208-MAP

THIS DOCUMENT RELATES TO:
All Cases

**REDACTED VERSION**

**MEMORANDUM OF LAW IN SUPPORT OF
<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

[Unredacted original filed conditionally under seal on October 5, 2012, pursuant to
Defendant's October 3, 2012, Consent Motion for Leave to File Under Seal]

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................1

SUMMARY OF UNDISPUTED FACTS ......................................................................3

    1.     Background Of The SGLI Program...................................................3

    2.     The Alliance Account Program. ...........................................................3

    3.     No Compensable Loss Resulting From Alliance Accounts....................................4

         A.    No Monetary Injury Resulting From Receiving An Alliance Account.....................................................................5

         B.    The Plaintiffs Knew They Could Withdraw Their Funds From Their Alliance Accounts At Any Time.........................6

               i.    Plaintiffs Have Admitted That They Knew They Could Withdraw Their Funds At Any Time...............................6

               ii.    Plaintiffs' Conduct Confirms That They Knew They Could Withdraw Their Funds At Any Time...............................7

         C.    Plaintiffs Testified And/Or Demonstrated By Their Conduct That They Derived Benefit From Their Alliance Accounts...............8

               i.    Some Plaintiffs Wrote Numerous Checks From Their Alliance Accounts.................................................8

               ii.    Some Plaintiffs Received A Better Interest Rate  On Alliance Account Assets Than On Their  Checking Accounts. ...................9

               iii.    Several Plaintiffs Who Received Financial Counseling Regarding Their Benefits Subsequently Kept Their Funds In Their Alliance Accounts...........................9

ARGUMENT.................................................................................................................10

I.    Summary Judgment Should Be Granted To Prudential Because The Undisputed Facts Demonstrate That Plaintiffs Suffered No Injury. ..................................10

II.    Plaintiffs' Claims Fail Because Plaintiffs Cannot Establish Any Compensable Injury Resulting From Receiving An Alliance Account...................................11

    1.     Plaintiffs Are Required To Prove Actual Injury For Each Claim.........................11

    2.     Plaintiffs Have Failed To Show Any Monetary Injury..........................................14

3.      Plaintiffs' Fallback Argument That They Suffered Abstract Non-Economic Harm Is Insufficient To Defeat Summary Judgment Because Such "Injuries" Are Not Legally Compensable....................................................16

CONCLUSION.................................................................................................................18

# TABLE OF AUTHORITIES

**CASES:**                                                                                    **Page**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)................................................................................10

*Atl. Research Mktg. Sys., Inc. v. Saco Defense, Inc.*,
    997 F. Supp. 159 (D. Mass. 1998) ................................................ 11-12

*Barnes v. Gorman*,
    536 U.S. 181 (2002)................................................................................12

*Berg v. First State Ins. Co.*,
    915 F.2d 460 (9th Cir. 1990) ...........................................................14, 16

*Brit Ins. Holdings, N.V. v. Krantz*,
    No. 1:11 CV 948, 2012 WL 28342 (N.D. Ohio Jan. 5, 2012) ................17

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)................................................................................10

*Clark v. Metro. Life Ins. Co.*,
    No. 3:08-cv-00158-LRH-VPC, 2010 WL 3636194 (D. Nev. Sept. 9, 2010),
    *aff'd*, 461 F. App'x 538 (9th Cir. 2011)................................................12

*Cordeco Dev. Corp. v. Santiago Vasquez*,
    539 F.2d 256 (1st Cir. 1976)..................................................................15

*Cozzone v. Axa Equitable Life Ins. Soc'y*,
    No. 3:CV-10-2388, 2012 WL 871201 (M.D. Pa. Mar. 14, 2012) ..........12

*Daley v. Town of W. Brookfield*,
    19 Mass. App. Ct. 1019 (1985)..............................................................17

*Dann v. Patten*,
    No. 07-P-1031, 2008 Mass. App. Unpub. LEXIS 300
    (Mass. App. Ct. Nov. 17, 2008)..............................................................13

*Doyle v. Hasbro, Inc.*,
    103 F.3d 186 (1st Cir. 1996)..................................................................14

*Dyll v. Adams*,
    167 F.3d 945 (5th Cir. 1999) .................................................................16

*Eisenstein v. David G. Conlin, P.C.*,
    827 N.E.2d 686 (Mass. 2005) ................................................................13

*Glenwood Farms, Inc. v. O'Connor*,
666 F. Supp. 2d 154 (D. Me. 2009) ...................................................................................17

*Johnson v. Hewlett-Packard Co.*,
809 F. Supp. 2d 1114 (N.D. Cal. 2011) .............................................................................16

*Korpacz v. Women's Prof'l Football League*,
No. Civ.A. 04-10735-RWZ, 2006 WL 220762 (D. Mass. Jan. 27, 2006) ............................17

*Kriegel v. Bank of Am., N.A.*,
Nos. 07-cv-12246-NG, 08-cv-11598-NG, 2010 WL 3169579
(D. Mass. Aug. 10, 2010) ............................................................................................13, 14

*Layne Christensen Co. v. Bro-Tech Corp.*,
836 F. Supp. 2d 1203 (D. Kan. 2011) ...............................................................................12

*Mack v. Great Atl. & Pac. Tea Co.*,
871 F.2d 179 (1st Cir. 1989) ............................................................................................10

*Medina-Munoz v. R.J. Reynolds Tobacco Co.*,
896 F.2d 5 (1st Cir. 1990) ................................................................................................10

*Moore v. La-Z-Boy, Inc.*,
639 F. Supp. 2d 136 (D. Mass. 2009) ...............................................................................13

*Phillips v. Prudential Ins. Co. of Am.*,
No. 11-cv-0058-DRH, 2011 WL 5915148 (S.D. Ill. Nov. 28, 2011) .....................................12

*Red Lake Band of Chippewa Indians v. U.S. Dept. of Interior*,
624 F. Supp. 2d 1 (D.D.C. 2009) ......................................................................................11

*Redgrave v. Boston Symphony Orchestra, Inc.*,
855 F.2d 888 (1st Cir. 1988) ............................................................................................17

*Roseburg Lumber Co. v. Madigan*,
978 F.2d 660 (Fed. Cir. 1992) ..........................................................................................12

*Sentinel Prods. Corp. v. Platt*,
No. 98-11143-GAO, 2002 U.S. Dist. LEXIS 13217 (D. Mass. July 22, 2002) .....................13

*Sullivan v. City of Springfield*,
561 F.3d 7 (1st Cir. 2009) ................................................................................................10

*Warriner Hermetics, Inc. v. Copeland Refrigeration Corp.*,
463 F.2d 1002 (5th Cir. 1972) ..........................................................................................13

*Waters v. EarthLink, Inc.*,
No. 01-628, 2006 WL 1549685 (Mass. Super. May 10, 2006) ............................................13

**STATUTES:**

38 U.S.C. § 1966...........................................................................................................................3

**RULES**:

Fed. R. Civ. P. 56(a) ..............................................................................................................10

**OTHER AUTHORITIES:**

22 Am. Jur. 2d *Damages* § 703 (2012).......................................................................................11

Defendant, The Prudential Insurance Company of America ("Prudential"), respectfully moves for summary judgment on the First Consolidated Amended Complaint (the "Complaint") filed by the ten named plaintiffs (the "Plaintiffs") on the ground that none of them suffered any actual, legally cognizable injury.

## PRELIMINARY STATEMENT

Plaintiffs claim that they were injured by virtue of receiving their life insurance benefits in the form of a guaranteed interest-bearing account plus a checkbook giving them immediate access to the full value of the benefits due to them under the SGLI group policy,[1] as opposed to receiving a check in the mail.  After more than a year of litigation, the record demonstrates no injury to Plaintiffs, who are unable to articulate or prove any actual harm caused by receiving an Alliance Account.  Plaintiffs' claims, for which they seek the extraordinary remedies of disgorgement and punitive damages, fail on the most fundamental level:  Plaintiffs were not harmed by Prudential.

Each cause of action asserted in the Complaint requires Plaintiffs to plead and prove they "suffered some actual, legally cognizable injury as a result of Prudential's conduct." Memorandum and Order Regarding Motion for Class Certification ("Mem. & Order"), Doc. No. 113, at 11 (Aug. 20, 2012).  The undisputed facts make clear that Plaintiffs have not met—and cannot meet—that burden.  Despite extensive deposition questioning regarding injury, no Plaintiff identified any financial injury caused by receiving an Alliance Account, with the arguable exception of one Plaintiff who claimed that she incurred gasoline expense by virtue of

---

[1]   The SGLI policy provides three types of insurance:  Servicemembers' Group Life Insurance ("SGLI"), Veterans' Group Life Insurance ("VGLI"), and Family SGLI ("FSGLI"). [56.1 at ¶ 1.]  For convenience, all three are referred to collectively as "SGLI."

extra trips to the bank that she claimed were caused by receiving an Alliance Account.  This factor alone requires dismissal of Plaintiffs' claims.

In addition, the undisputed facts confirm, among other things, almost every Plaintiff knew that he or she could withdraw money from his or her Alliance Account at will; that Prudential provided each of them with the checkbooks and instructions on how to do so; that rather than withdrawing all of their money and investing it elsewhere, as they could easily have done (and as one Plaintiff immediately did), most Plaintiffs chose to leave at least some portion of their money in their Alliance Accounts for a period of time; and that half of the Plaintiffs wrote multiple checks on their accounts, and some wrote so many checks they called Prudential to order more.  These facts are entirely inconsistent with the Plaintiffs' claims of injury.

Implicitly acknowledging their inability to plead economic injury, Plaintiffs fall back on arguments that their Alliance Accounts caused them embarrassment, frustration, loss of choice, inconvenience, dishonor and similar abstract injuries.  Even if Plaintiffs could prove that Prudential somehow caused these purported "injuries," such nebulous allegations are insufficient as a matter of law to sustain Plaintiffs' claims.

In short, Plaintiffs seek a windfall via the extraordinary remedy of disgorgement, in effect arguing that Prudential was required not only to pay them the full value of the benefits due under the policy plus specified interest but also to invest their money, guarantee their principal, bear all risk of investment loss, and give Plaintiffs all investment gains, all without any promise by Prudential to do so.  The record is bereft of any evidence of injury, and Plaintiffs' inability to demonstrate a cognizable injury forecloses their claims.  Summary judgment should be granted in Prudential's favor on all claims. Finally, even if a particular Plaintiff were able to identify a cognizable injury (which is plainly not the case), summary judgment on the question of injury

would still be appropriate for all other Plaintiffs.  Moreover, the highly individualized nature of the proof required makes clear that Plaintiffs' claims would not be susceptible to class-wide adjudication.

## SUMMARY OF UNDISPUTED FACTS

### 1.  Background Of The SGLI Program.

Since 1965, Prudential has been the Department of Veterans Affairs' ("VA's") provider of group life insurance coverage to members of the uniformed services, their families and veterans under the SGLI programs.  [56.1 at ¶¶ 1-2; 38 U.S.C. § 1966.][2]

In 1999, the VA and Prudential agreed that lump sum settlements of insurance proceeds would be made through retained asset accounts known as "Alliance Accounts." [56.1 at ¶ 3.] The VA publicly informed Congress of the change, describing the Alliance Account program as an enhancement to the SGLI program, as it provided beneficiaries with time to make important financial decisions while their funds were secure and earning interest.  [56.1 at ¶¶ 3, 6-7.]

### 2.  The Alliance Account Program.

The Alliance Account program, administered by Prudential through the Office of Servicemembers Group Life Insurance, provided each Plaintiff with an interest-bearing account that allowed the Plaintiff to access his or her funds by writing a check.  [56.1 at ¶¶ 8, 10.] Although the precise wording changed over time, from the first notification of benefits and repeatedly through the account-opening process, Prudential clearly explained the terms governing Alliance Accounts and set forth the options available to each Plaintiff under the Alliance Account program, including how to close the account.  [56.1 at ¶¶ 9-12.]  Each Plaintiff was informed that an Alliance Account was an individual, interest-bearing account and that they

---

[2]   Citations in the form "[56.1 at ¶ __.]" refer to Defendant's Statement of Undisputed Facts Pursuant to Local Rule 56.1, filed concurrently with this Memorandum.

would be able to access their entire Alliance Account balance by writing a check.  [56.1 at ¶ 9, 11.]

As a beneficiary of a lump sum settlement through an Alliance Account, each Plaintiff then received an information packet from Prudential containing:  (1) a Certificate of Account Confirmation (or similar document) showing the account balance (which represented the full amount due to the recipient under the policy), current interest rate, annual percentage yield, and the account's terms and conditions; (2) an Alliance Account checkbook; and (3) a guide to the features of an Alliance Account.  [56.1 at ¶ 10.]

While the terms and conditions varied slightly during the period of Plaintiffs' claims, each Plaintiff received certain basic information in their terms and conditions document.  First, the terms and conditions made clear that the Plaintiffs could close their Alliance Accounts by writing a check for the full account balance to themselves or to a third party, often under a separate heading entitled "Closing Your Alliance Account."  [56.1 at ¶¶ 15, 23, 35, 46, 56, 65, 74, 81, 92, 101.]  The terms and conditions further informed each Plaintiff that the interest rate on his or her Alliance Account might change, but not more than monthly, and that interest would be compounded daily.  [*Id.*]

The "Features and Benefits" guide (or similar guides they received) provided Plaintiffs with detailed information about their Alliance Accounts.  The documents informed Plaintiffs that they could write one check for the entire amount and close their Alliance Account, or could use the account like a normal checking account, so long as checks were written for at least $250. [56.1 at ¶¶ 16, 24, 36, 47, 57, 66, 75, 82, 93, 102.]

### 3.    No Compensable Loss Resulting From Alliance Accounts.

No Plaintiff has identified a monetary harm that resulted from receipt of an Alliance Account instead of a check from Prudential, nor can they.  On the contrary, the undisputed facts

4

make clear that (i) the full value of the benefit promised to each Plaintiff was deposited in that Plaintiff's Alliance Account, plus interest; (ii) no Plaintiff suffered any financial injury by virtue of receiving an Alliance Account; (iii) each Plaintiff had the ability withdraw the funds from his or her Alliance Account at any time; and (iv) most Plaintiffs testified and/or demonstrated by their conduct that they actually derived benefit from their Alliance Accounts.  A chart summarizing the evidence by Plaintiff is attached for the Court's convenience as Exhibit A.

### A.      No Monetary Injury Resulting From Receiving An Alliance Account.

Despite thorough deposition questioning on the topic of injury, no Plaintiff was able to identify any monetary harm resulting from receiving an Alliance Account instead of a check. The only issues that any Plaintiff could identify were logistical challenges in using their Alliance Account checks—for example, (i) ███████████████████████████████████████████ ██████████████████████████████████████████████████████ ███████████████████ and (ii) ██████████████████████████████ ██████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ██████████████████████████████

One Plaintiff—Lt. Cmdr. Parsons—stated that she had to visit her bank several times in order to make a mortgage payment because she could not make a wire transfer directly from her Alliance Account, and that these trips "cost . . . time [and] cost . . . gas."  [56.1 at ¶ 69.]

**B.      The Plaintiffs Knew They Could Withdraw Their Funds From Their Alliance Accounts At Any Time.**

As noted above, Prudential repeatedly informed the Plaintiffs that they could access and close their Alliance Accounts simply by writing a check for the full balance of the account. Plaintiffs' testimony and conduct demonstrate that they understood that they could do so.

**i.      Plaintiffs Have Admitted That They Knew They Could Withdraw Their Funds At Any Time.**

Each of the Plaintiffs admitted that they (or those to whom they entrusted financial decisions) knew they could access their funds simply by writing a check for their account balance from the time they received their Alliance Account or shortly thereafter, yet most kept their Alliance Accounts open for at least several months.  [56.1 at ¶ 113.]  For example:

- Lt. Cmdr. Parsons stated that she knew she could write a check for the full amount of her Alliance Account because "Prudential told [her she] could." [56.1 at ¶ 68.]

- Mrs. Davey admitted that she knew when she received her Alliance Account checkbook that she could write one check and close down the account, yet chose to keep her account open for eight months, even after speaking to a financial counselor about what to do with the funds in her Alliance Account.  [56.1 at ¶¶ 27-28, 31.]

- Mr. Lucey stated that he understood when he received his Alliance Account checkbook that he could access the funds by writing a check and close the account by writing a check for the full account balance.  [56.1 at ¶ 41.][3]

None of the Plaintiffs claimed that Prudential discouraged them from closing their Alliance Accounts or told them what to do with their Alliance Account funds.  [56.1 at ¶¶ 20, 32, 43, 53, 62, 71, 78, 89, 98.]  Each Plaintiff (except for Karen Meredith, whose Alliance Account

---

[3]    The only Plaintiff who was not aware he could take his money out immediately was Mr. Castro, whose wife was responsible for the account, and she acknowledged that from the very day they received their checkbook, she knew they could have withdrawn their money at any time.  [56.1 at ¶ 18.]  Col. Patrin testified that once he overcame the "fog" resulting from the loss of his son and thought about the insurance benefits, he was able to obtain his money immediately.  [56.1 at ¶ 76.]

remains active) was able to close his or her Alliance Account when he or she wished by writing a check or contacting Prudential.  [56.1 at ¶¶ 17, 26, 37-39, 50, 58, 67, 76, 83, 94-95, 104.]

> **ii.      Plaintiffs' Conduct Confirms That They Knew They Could Withdraw Their Funds At Any Time.**

Six of ten of the Plaintiffs withdrew a portion of their Alliance Accounts by writing a check for less than the full account balance, further demonstrating that they understood how to access their Alliance Account funds yet chose not to remove the full account balance. Specifically:



These Plaintiffs also admitted that they could have withdrawn their full account balances when they wrote Alliance Account checks but chose to keep the account open. [56.1 at ¶¶ 31, 41, 52, 60, 68, 86.]  In addition, ███████████████████████████████████████

████████████████████████████████████████

████████████████████████████

### C.   Plaintiffs Testified And/Or Demonstrated By Their Conduct That They Derived Benefit From Their Alliance Accounts.

While each of the Plaintiffs used his or her Alliance Account differently, many Plaintiffs used the checks frequently to pay various expenses, and some admitted that they found the account convenient or helpful in providing them a safe place to keep their money while they decided how best to use the proceeds.

### i.   Some Plaintiffs Wrote Numerous Checks From Their Alliance Accounts.

Some Plaintiffs wrote numerous checks on their Alliance Accounts.  For instance:



Two Plaintiffs called Prudential to order more Alliance Account checks:



### ii. Some Plaintiffs Received A Better Interest Rate On Alliance Account Assets Than On Their Checking Accounts.

Numerous Plaintiffs received a better interest rate through their Alliance Account than through their existing checking or savings accounts.



### iii. Several Plaintiffs Who Received Financial Counseling Regarding Their Benefits Subsequently Kept Their Funds In Their Alliance Accounts.

Various Plaintiffs consulted either a family member with financial knowledge or a third-party financial adviser to discuss their Alliance Account funds.  [56.1 at ¶¶ 27, 61, 70, 88.] Several of them kept their funds in their Alliance Accounts for months or even years after receiving financial counseling:





**ARGUMENT**

**I.**   **Summary Judgment Should Be Granted To Prudential Because The Undisputed Facts Demonstrate That Plaintiffs Suffered No Injury.**

Summary judgment is appropriate where there is no "genuine issue as to any material fact" and the "moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a).  "The test for summary judgment is steeped in reality. . . . [T]he party opposing the motion must set forth specific facts showing that there is a genuine issue for trial." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (citation and internal punctuation omitted).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  "[C]onjectural" evidence is likewise insufficient to defeat summary judgment.  *Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 181 (1st Cir. 1989); *accord Medina-Munoz*, 896 F.2d at 8 (summary judgment opposition cannot "rest[] merely upon conclusory allegations, improbable inferences, and unsupported speculation"); *Sullivan v. City of Springfield*, 561 F.3d 7, 14 (1st Cir. 2009).  An issue of material fact is only "genuine" if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 247-48.

The undisputed facts make clear that no Plaintiff has suffered any compensable injury and that summary judgment should be granted in Prudential's favor on all claims.

## II.   Plaintiffs' Claims Fail Because Plaintiffs Cannot Establish Any Compensable Injury Resulting From Receiving An Alliance Account.

### 1.   Plaintiffs Are Required To Prove Actual Injury For Each Claim.

As Prudential demonstrated in its briefing on class certification, Plaintiffs are required to prove actual injury in order to establish each of their claims.  Defendant's Mem. in Opp. to Class Cert., Doc. No. 93, at 14-19 (May 11, 2012); Defendant's Sur-Reply to Motion for Class Cert., Doc. No. 106, at 7-8, 10, 14, 17 (May 25, 2012); *see* Mem. & Order at 11-12 ("This threshold question of whether Plaintiffs suffered any cognizable injury is central to the case.  A finding that the named Plaintiffs suffered no injury . . . may terminate the existing lawsuits."); 22 Am. Jur. 2d *Damages* § 703 (2012) (the party seeking damages generally bears the burden to show "the *fact and extent of an injury* and to show the amount and value of his or her damages, whether the action is for a breach of contract or for tort." (emphasis added)).  This commonsensical requirement prevents plaintiffs from obtaining impermissible windfall recoveries.[4]

Contract Claims.  The "actual injury" requirement applies to each of Plaintiffs' contract-based claims, including breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of the SGLI statute.

—Breach of contract claims require proof of the "fact of injury."  *See, e.g.*, *Red Lake Band of Chippewa Indians v. U.S. Dept. of Interior*, 624 F. Supp. 2d 1, 13, 23 (D.D.C. 2009) ("fact of loss" is an element of contract-based claims); *Atl. Research Mktg. Sys., Inc. v.*

---

[4]   Plaintiffs seek the extraordinary remedy of disgorgement, but as this Court previously held, Plaintiffs first must show "some cognizable, legal injury to establish liability." Mem. & Order at 9-11.

*Saco Defense, Inc.,* 997 F. Supp. 159, 170 (D. Mass. 1998) (adopting report and recommendation

and granting summary judgment in defendant's favor where plaintiffs failed to put forth evidence

of causation and damages); *see also, e.g., Roseburg Lumber Co. v. Madigan*, 978 F.2d 660, 667

(Fed. Cir. 1992) ("Contract law has long been held to preclude recovery for speculative damages

. . . [a]bsent tangible proof of damages, appellant may not recover for an alleged injury.")

(citation omitted); *Phillips v. Prudential Ins. Co. of Am.*, No. 11-cv-0058-DRH, 2011 WL

5915148, at *2-3 (S.D. Ill. Nov. 28, 2011) (case dismissed because there was no "resultant injury

to the plaintiff" from receiving an Alliance Account rather than a check); *Clark v. Metro. Life

Ins. Co.*, No. 3:08-cv-00158-LRH-VPC, 2010 WL 3636194, at *3-6 (D. Nev. Sept. 9, 2010)

(summary judgment for defendant on breach of contract claim because plaintiff failed to show

damages), *aff'd,* 461 F. App'x 538 (9th Cir. 2011).

 —Claims for breach of the implied covenant of good faith and fair dealing require

proof of each of the elements of a contract claim, including fact of injury.  *Cozzone v. Axa

Equitable Life Ins. Soc'y,* No. 3:CV-10-2388, 2012 WL 871201, at *9 (M.D. Pa. Mar. 14, 2012)

("to plead a cause of action for breach of the covenant of good faith, whether it is an express or

implied covenant, a Plaintiff must properly plead the elements of a claim of breach of contract.")

(quoting *CRS Auto Parts, Inc. v. National Grange Mut. Ins. Co.*, 645 F. Supp. 2d 354, 369 (E.D.

Pa. 2009)); *Layne Christensen Co. v. Bro-Tech Corp.*, 836 F. Supp. 2d 1203, 1222 (D. Kan.

2011) (same).

 —The SGLI statutory claim likewise requires proof of fact of injury because the

statute is contractual in nature and only allows for contractual damages, which require proof of

injury.  *See, e.g., Barnes v. Gorman*, 536 U.S. 181, 187-88 (2002) (where the statute is of a

contractual nature, only contractual remedies are available); Transcript of Oral Argument on

Motion for Class Cert., Doc. No. 110, at 45:3-4 (May 30, 2012)  (plaintiffs' counsel states that "the elements [of the statutory violation claim] are very similar" to a breach of contract claim). Case law concerning other statutes reinforces this conclusion.  *Waters v. EarthLink, Inc.*, No. 01-628, 2006 WL 1549685, at *8 (Mass. Super. May 10, 2006) (fact of injury and its causal connection to defendant's conduct "essential" to statutory cause of action); *Warriner Hermetics, Inc. v. Copeland Refrigeration Corp.*, 463 F.2d 1002, 1016 (5th Cir. 1972) (in antitrust context, plaintiff cannot recover for per se violation of law without showing economic injury to itself).

Breach of Fiduciary Duty.  Plaintiffs must prove that they suffered injury in order to establish a claim for breach of fiduciary duty.  *See, e.g.*, *Eisenstein v. David G. Conlin, P.C.*, 827 N.E.2d 686, 693-94 (Mass. 2005) (affirming summary judgment for defendant because "[t]he claims for breach of fiduciary duty . . . falter on the requirement of harm" and "[o]n this record, [plaintiff] has no reasonable expectation of proving that it suffered any losses"); *Dann v. Patten*, No. 07-P-1031, 2008 Mass. App. Unpub. LEXIS 300, at *7 (Mass. App. Ct. Nov. 17, 2008) (affirming summary judgment for defendant because "damage is [an] essential element of [a] breach of fiduciary duty claim") (citation omitted); *Sentinel Prods. Corp. v. Platt*, No. 98-11143-GAO, 2002 U.S. Dist. LEXIS 13217, at *6, 10-12 (D. Mass. July 22, 2002) (granting summary judgment to defendants because plaintiff asserting claim "for breach of fiduciary duty . . . must . . . show that the breach caused him some harm" but had failed to do so).

Unjust Enrichment.  To state a claim for unjust enrichment, a plaintiff must show "impoverishment" as a result of the defendant's conduct.  *Kriegel v. Bank of Am., N.A.,* Nos. 07-cv-12246-NG, 08-cv-11598-NG, 2010 WL 3169579, at *15 (D. Mass. Aug. 10, 2010) (dismissing unjust enrichment claim for failure to allege "impoverishment"); *Moore v. La-Z-Boy, Inc.*, 639 F. Supp. 2d 136, 143-44 (D. Mass. 2009) ("To sustain a claim for unjust enrichment,

13

plaintiffs must show (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and the impoverishment, (4) the absence of justification and (5) the absence of a remedy provided by law.") (citation and internal punctuation omitted).  Simply alleging that the defendant made a profit is insufficient to establish injury by the plaintiff.  *See Kriegel*, 2010 WL 3169579, at *15 (allegation that  defendant was unjustly enriched "by reinvesting [plaintiffs'] deposits at a higher interest rate while paying them a lower rate" demonstrated neither impoverishment of plaintiff nor enrichment of defendant within the meaning of the law).

Fraud.  A fraud claim likewise requires a showing that plaintiffs were injured as a result of their reliance on defendant.  *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 193 (1st Cir. 1996) (plaintiffs must show they "were injured as a result of their reliance," as an element of a fraud claim, and affirming dismissal, in part, because plaintiffs failed to allege injury); *see also Berg v. First State Ins. Co.*, 915 F.2d 460 (9th Cir. 1990) (affirming grant of summary judgment on fraud claims—as well as claims for breach of fiduciary duty, and breach of the covenant of good faith and fair dealing—because of plaintiffs' failure to prove the fact of damage).

**2.      Plaintiffs Have Failed To Show Any Monetary Injury.**

Plaintiffs have not demonstrated any economic injury they suffered as a result of Prudential's actions.  Each Plaintiff received the full value of the benefit promised under the insurance policy and the SGLI statute, plus accrued interest.  While these funds may not have been delivered in the form of a check, all the Plaintiffs agree that they could withdraw their funds at any time and that they were paid interest on any amounts remaining in their Alliance Accounts.  No Plaintiff experienced any adverse financial consequences in receiving the insurance proceeds through an Alliance Account rather than a check.

The undisputed individualized facts cited above make clear that:

- Nine out of ten Plaintiffs could not identify even the slightest monetary loss caused by receiving an Alliance Account checkbook.  The only arguable exception is Lt. Cmdr. Parsons, who claims that logistical issues with an attempted wire transfer from her Alliance Account required her to visit her bank several times, costing her time and gas.[5]  [56.1 at ¶ 109.]

- Each Plaintiff could withdraw money at will and was free to close his or her account at any time.  [56.1 at ¶ 111.]

- Each Plaintiff received clear instructions on how to withdraw some or all of the money and received checks with which to do it.  [56.1 at ¶ 110.]

- Nine of the ten Plaintiffs (or their spouses) either testified or demonstrated that they understood from the outset that the money could be withdrawn in its entirety. One acknowledged that once he overcame the "fog" resulting from the loss of his son and thought about the insurance benefits, he was able to obtain his money immediately. [56.1 at ¶ 112.]

- Rather than immediately withdrawing all of their money and investing it elsewhere, as they could have done (and as one Plaintiff did), most Plaintiffs chose to leave at least some portion of their money in their Alliance Accounts for a period of time [56.1 at ¶ 113], reflecting a preference for an Alliance Account that further disproves their present allegations of harm.

- Five Plaintiffs wrote multiple checks on their accounts, and when two plaintiffs needed additional checks, they called Prudential and ordered more instead of closing the account.  [56.1 at ¶ 114.]

- Many Plaintiffs benefited from the use of their Alliance Accounts as evidenced by their testimony and their conduct, including their decisions to leave funds in the account for months or years (even after consulting independent financial advisers), to write multiple checks from the account, and to request additional checks from Prudential as necessary.

Plaintiffs cannot sustain an action for damages where, as here, the facts clearly

demonstrate that they suffered no monetary loss as a result of Prudential's conduct.  *Cordeco*

*Dev. Corp. v. Santiago Vasquez*, 539 F.2d 256, 262 (1st Cir. 1976) ("A party's financial loss is

the ultimate measure of his damage, . . . and the purpose of a damage award is *to compensate the*

---

[5]   To the extent this constitutes an injury, it is too attenuated from the receipt of an Alliance Account to be compensable.

15

*injured party for loss resulting from the conduct of the wrongdoer*, not to penalize the wrongdoer or to allow plaintiff to recover a windfall.") (emphasis added) (citations and internal punctuation omitted).

Summary judgment should be granted in favor of Prudential because Plaintiffs have failed to prove an essential element of each of their claims:  fact of injury.  *Johnson v. Hewlett-Packard Co.*, 809 F. Supp. 2d 1114, 1131 (N.D. Cal. 2011) (granting summary judgment, in part, because "the general evidence does not establish even the fact of damage as to these [p]laintiffs"); *Berg*, 915 F.2d at 465 (undisputed facts established that "pecuniary damage is nonexistent," and therefore, "it is difficult to conceive how [plaintiffs] have been damaged"); *Dyll v. Adams*, 167 F.3d 945, 947 (5th Cir. 1999) (overturning jury verdict for damages on claims on fraud, negligent misrepresentation, gross negligence, breach of fiduciary duty, breach of contract, and others, because "[u]ncertainty as to the fact of legal damages is fatal to recovery") (citation and internal punctuation omitted).[6]

3.     **Plaintiffs' Fallback Argument That They Suffered Abstract Non-Economic Harm Is Insufficient To Defeat Summary Judgment Because Such "Injuries" Are Not Legally Compensable.**

In an implicit acknowledgment that they suffered no financial injury, Plaintiffs resort to various assertions that their Alliance Accounts caused them embarrassment, frustration, loss of choice, inconvenience, dishonor and similar abstractions, such as (i)  "the loss of choice over

---

[6]    Equally unavailing is Plaintiffs' claim that they should be able to recover—on a theory of opportunity cost—"interest that could have been earned in investments similar to those Prudential made with the money." Complaint ¶ 109.  This claim fails because the undisputed facts show that Plaintiffs were always free (and understood that they were free) to access the funds for other investments or any other purpose.  *See Bogosian v. Woloohojian*, 158 F.3d 1, 9 (1st Cir. 1998) ("it is a general rule that interest will not accrue after a valid tender"); *Nationwide Life Ins. Co. v. Steiner*, 757 F. Supp. 2d 114, 119 (D.R.I. 2010) (same); *Arete Partners, L.P. v. Gunnerman*, 643 F.3d 410, 415-16 (5th Cir. 2011) ("if the plaintiff can access those funds without condition, then there is no need to compensate him in the event he does not").

whether to sign-on to an Alliance Account"; (ii) "the loss of being able to honor the selection of

their fallen family member"; and (iii) "the harm of being exploited by Prudential's

manipulation." Plaintiffs' Supp. Brief in Support of Class Cert., Doc. No. 111, at 7 (June 22,

2012). Even if Plaintiffs could prove that Prudential's conduct somehow caused these purported

"harms," such nebulous and abstract harms do not constitute legally cognizable injury and are

legally insufficient to support any of Plaintiffs' claims. *See, e.g.*, *Korpacz v. Women's Prof'l*

*Football League*, No. Civ.A. 04-10735-RWZ, 2006 WL 220762, at *3 (D. Mass. Jan. 27, 2006)

(breach of contract) ("for breach of contract cases, noneconomic damages are generally

unavailable"); *Daley v. Town of W. Brookfield*, 19 Mass. App. Ct. 1019, 1021 n.1 (1985) (breach

of contract) ("[d]amages for injury to reputation are usually not available in contract actions,"

because "such damages are remote and not within the contemplation of the parties"); *Redgrave v.*

*Boston Symphony Orchestra, Inc.*, 855 F.2d 888, 892 (1st Cir. 1988) (good faith and fair dealing)

("damage to their professional reputations, disruption of their personal lives, and great pain of

body and mind" were not compensable injuries for breach of an implied covenant of good faith

and fair dealing because such damages are not "contract damages") (citing *McCone v. New*

*England Tel. & Tel. Co.*, 393 Mass. 231, 234 n.8 (1984)); *Brit Ins. Holdings, N.V. v. Krantz*, No.

1:11 CV 948, 2012 WL 28342, at *9 (N.D. Ohio Jan. 5, 2012) (fiduciary duty) (conclusory

allegations of "shame, humiliation, embarrassment, and loss of reputation" were insufficient to

satisfy the "harm" element for breach of fiduciary duty and other claims); *Glenwood Farms, Inc.*

*v. O'Connor*, 666 F. Supp. 2d 154, 172 (D. Me. 2009) (fraud) ("non-economic losses are

unrecoverable in a fraud action," despite the presence of "some . . . amorphous psychic harm").

Accordingly, Plaintiffs' assertions of abstract and psychological harms cannot defeat summary

judgment.

17

## CONCLUSION

For the reasons stated herein, Prudential respectfully requests that, with respect to each Plaintiff, summary judgment be granted in Prudential's favor on all claims.

Respectfully submitted,

/s/ Michael K. Isenman

Paul E. Nemser (BBO #369180)
Alison V. Douglass (BBO # 641494)
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts 02109
Tel: (617) 571-1000
Fax: (617) 523-1231

Richard M. Wyner (pro hac vice)
Michael K. Isenman (pro hac vice)
GOODWIN PROCTER LLP
901 New York Avenue, N.W.
Washington, D.C. 20001
Tel: (202) 346-4000
Fax: (212) 355-3333

Dated:  October 5, 2012                *Counsel for Defendant The Prudential Insurance Company of America*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| *In re Prudential Insurance Company of America SGLI/VGLI Contract Litigation* | Master Case No. 3:11-md-02208-MAP<br><br>THIS DOCUMENT RELATES TO:<br>All Cases |

<u>**CERTIFICATE OF SERVICE**</u>

I, Michael K. Isenman, hereby certify that on October 9, 2012, this redacted version of Defendant The Prudential Insurance Company of America's Memorandum of Law in Support of Defendant's Motion for Summary Judgment, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants.


/s/ Michael K. Isenman
Michael K. Isenman