**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re Prudential Insurance Company of America SGLI/VGLI Contract Litigation | Master Case No. 3:11-md-02208-MAP<br><br>THIS DOCUMENT RELATES TO:<br>All Cases<br><br>Leave to File Granted on August 20, 2012 |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF**
**ITS MOTION FOR SUMMARY JUDGMENT**

**Table of Contents**

Table of Authorities ............................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................1

ARGUMENT ..............................................................................................................3

I.    The Lack Of Actual Injury Is Fatal To Plaintiffs' Claims Regardless Of
Their Preferred Remedies. .........................................................................................3

    A.    Fact of Injury Is Distinct From Remedy. ..........................................................4

    B.    Plaintiffs' Lack Of Injury Means They Cannot Prove An Element Of
Each Of Their Causes Of Action. .....................................................................6

II.    The Undisputed Facts Establish No Plaintiff Suffered A Cognizable Injury. ............9

III.    There Was No "Delay" Because Plaintiffs Had Full Access To Their Funds
At All Times. .........................................................................................................11

CONCLUSION .........................................................................................................12

# TABLE OF AUTHORITIES

**CASES:** **Page**

*Arete Partners, L.P. v. Gunnerman,*
643 F.3d 410 (5th Cir. 2011) ............................................................11

*Arthur D. Little, Inc. v. Dooyang Corp.,*
147 F.3d 47 (1st Cir. 1998)...............................................................12

*Berg v. First State Ins. Co.,*
915 F.2d 460 (9th Cir. 1990) ..............................................................5

*Berish v. Bornstein,*
770 N.E.2d 961 (Mass. 2002) ..............................................................8

*Clark v. Metro. Life Ins. Co.,*
No. 3:08-cv-00158-LRH-VPC, 2010 WL 3636194 (D. Nev. Sept. 10, 2010),
*aff'd,* 461 F. App'x 538 (9th Cir. 2011).........................................3-4, 5-6

*Dyll v. Adams,*
167 F.3d 945 (5th Cir. 1999) ............................................................5, 7

*Franconero v. Universal Music Corp.,*
No. 02 Civ. 1963 (BSJ), 2011 WL 566794 (S.D.N.Y. Feb. 11, 2011)....................9

*In re Refco Inc. Sec. Litig.,*
826 F. Supp. 2d 478 (S.D.N.Y. 2011)......................................................8

*Janigan v. Taylor,*
344 F.2d 781 (1st Cir. 1965)...............................................................6

*Johnson v. Hewlett-Packard Co.,*
809 F. Supp. 2d 1114 (N.D. Cal. 2011) ....................................................5

*Kerin v. U.S. Postal Serv.,*
116 F.3d 988 (2d Cir. 1997)................................................................8

*Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.,*
552 F.3d 47 (1st Cir. 2009)................................................................7

*Medina-Munoz v. R.J. Reynolds Tobacco Co.,*
896 F.2d 5 (1st Cir. 1990)...............................................................4, 5

*Merrimon v. Unum Life Ins. Co. of Am.,*
845 F. Supp. 2d 310 (D. Me. 2012) .......................................................12

*Mogel v. Unum Life Ins. Co. of America*,
    547 F.3d 23 (1st Cir. 2008) ............................................................................6

*Nichols v. Minnick*,
    885 N.E.2d 1 (Ind. 2008) ...............................................................................8

*Olwell v. Nye & Nissen Co.*,
    26 Wash. 2d 282 (1946) ..................................................................................6

*Phillips v. Prudential Ins. Co. of Am.*,
    No. 11-cv-0058-DRH, 2011 WL 5915148 (S.D. Ill. Nov. 28, 2011) .............3, 5, 11

*Powers v. Ryan*,
    No. CIV. A. 00–10295–00, 2001 WL 92230 (D. Mass. Jan. 9, 2001) .....................8

*United States v. Project on Gov't Oversight*,
    572 F. Supp. 2d 73 (D.D.C. 2008) ...................................................................8

*Walker v. City of Lakewood*,
    272 F.3d 1114 (9th Cir. 2001) .........................................................................12


**OTHER AUTHORITIES:**

Dan B. Dobbs, *Law of Remedies* (2d ed. 1993) .........................................................7, 9

Restatement (Second) of Contracts § 346(2) (1981) ....................................................7

## PRELIMINARY STATEMENT

Plaintiffs' opposition brief makes clear that Plaintiffs are focused on the wrong issue. The Court invited the parties to brief the "narrow issue" of whether any Plaintiff has suffered any cognizable injury.  As Plaintiffs acknowledge, this is a liability question: if Plaintiffs cannot establish that they suffered a legally cognizable injury, they cannot establish Prudential's liability for any of their claims.  Plaintiffs address a different question:  whether, assuming that they could prove each element of their causes of action, they would be entitled to disgorgement of Prudential's profits without proof of each individual's financial harm.  This is a *remedy* question, not a liability question, and is both irrelevant to the issue on which the Court invited briefing and premature absent a finding that any Plaintiff was injured in the first instance.

Plaintiffs' argument rests on the false premise that Plaintiffs' selection of disgorgement as their preferred choice of remedy absolves them of the need to prove that each Plaintiff suffered a legally cognizable injury for purposes of establishing Prudential's liability.  Plaintiffs cite no legal support for this proposition.  It goes without saying that certain remedies—such as compensatory damages—require a plaintiff to prove the *amount* of losses.  Plaintiffs argue strenuously that the remedy of disgorgement does not itself require proof of financial loss.  But they do not and cannot argue that disgorgement is available to those who have not been injured in the first instance, whether financially or otherwise.

Plaintiffs make no serious attempt in their opposition brief to identify a cognizable injury or to refute the evidence Prudential proffered showing the lack of any such injury.  Plaintiffs concede that that none of them suffered any financial injury as a result of receiving an Alliance Account and identify no evidence suggesting that any of them experienced any other type of cognizable injury.  Instead, Plaintiffs continue to insist, without evidentiary or legal support, that each of them was inherently injured by receiving an Alliance Account—the same conclusory

proposition that the Court called into question in ordering summary judgment briefing on "the narrow issue of actual injury."  Memorandum and Order Regarding Motion for Class Certification ("Mem. & Order"), Doc. No. 111, at 13 (Aug. 20, 2012).  As the Court has already made clear, even if "an Alliance Account is not the same as a lump sum payment" that "does not necessarily mean that a beneficiary was injured by receiving an Alliance Account." *Id.* at 9-10.

For example, Plaintiffs argue that they suffered the actual injury of "delay," because the very receipt of an Alliance Account checkbook itself simply equates to delay.  No case dealing with retained asset accounts has held that this type of arrangement constitutes injury in the form of delay.  More to the point, Plaintiffs cite no case finding an actionable delay where the purportedly injured party had access to its funds all along, and no evidence that the Alliance Account arrangement caused *any actual delay injury* to a Plaintiff.

Similarly, Plaintiffs attempt to draw strained analogies between, on the one hand, the "injury" of receiving an Alliance Account checkbook and, on the other hand, various causes of action *Plaintiffs have not brought in this case*, including trespass to real property, conversion of tangible property, and misappropriation of funds.  Plaintiffs cite no authority to suggest that a retained asset account arrangement can be equated to any of these extraneous causes of action, and Plaintiffs unsurprisingly cite no evidence or legal authority to suggest that any *actual* trespass, conversion or misappropriation occurred.

Finally, Plaintiffs argue that any alleged intrusion upon any purported legal right— without more—constitutes an actual injury.  This circular theory would essentially read the element of actual injury out of each Plaintiffs' claims.  This is supported neither by case law nor by evidence, and the theory provides no explanation of *how any Plaintiff suffered actual harm.*

After more than a year of litigation and discovery, Plaintiffs still fail to articulate—much less prove—any actual, legally cognizable injury: no monetary injury, no tangible injury, no cognizable intangible injury.  This leaves Plaintiffs without any viable cause of action because all of their theories require proof of actual injury, as Plaintiffs concede.  Prudential's motion for summary judgment should be granted.[1]

## ARGUMENT

## I.    The Lack Of Actual Injury Is Fatal To Plaintiffs' Claims Regardless Of Their Preferred Remedies.

Plaintiffs now concede that "for each of their claims, Plaintiffs must show 'some cognizable, legal injury.'"  Plaintiffs' Opposition to Defendant's Motion for Summary Judgment ("Pl. Opp."), Doc. No. 148, at 3 (Nov. 5, 2012); *accord* Mem. & Order at 9 n.3, 11 n.4; Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Def. Mem."), at 11-14 (Oct. 5, 2012).  As established in Prudential's affirmative brief, and in Prudential's brief in opposition to Plaintiffs' motion, the undisputed facts prove that no Plaintiff suffered any actual, legally cognizable injury caused by Prudential.  Def. Mem. at 11-17; Defendant's Memorandum in Opposition to Plaintiffs' Motion For Summary Judgment ("Def. Opp."), Doc. No. 149, at 5-10 (Nov. 5, 2012); *see Phillips v. Prudential Ins. Co. of Am.*, No. 11-cv-0058-DRH, 2011 WL 5915148, at *2-3 (S.D. Ill. Nov. 28, 2011) (dismissing case where the court found that there was no "resultant injury to the plaintiff" from receiving an Alliance Account rather than a check); *Clark v. Metro. Life Ins. Co.,* No. 3:08-cv-00158-LRH-VPC, 2010 WL 3636194, at *5-7 (D. Nev. Sept. 10, 2010) (granting summary judgment to defendants on breach of contract and breach of confidential relationship claims involving retained asset accounts based

---

[1]  Although Plaintiffs could have recast their contract claim as one seeking only nominal damages, which is the only theory available to them absent proof of injury, they have not done so.

on plaintiff's failure to show injury resulting from an alleged breach), *aff'd*, 461 F. App'x 538,

(9th Cir. 2011).

Summary judgment is now warranted because Plaintiffs have failed to demonstrate that

there is any genuine dispute of material fact regarding whether injury exists.[2]  *See Medina-*

*Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) ("[T]he party opposing the

motion '*must set forth specific facts* showing that there is a genuine issue for trial'") (citation

omitted and emphasis added).

### A.      Fact of Injury Is Distinct From Remedy.

Implicitly acknowledging the lack of evidence of injury, Plaintiffs seek to blur the

doctrinal division between (*i*) the concept of "actual injury" required as an element of each of

their causes of action, and (*ii*) the calculation of "monetary loss" often used to quantify the extent

of the remedy.  Plaintiffs attempt to create a straw man, misstating that Prudential "contends that

the *only* legally cognizable injury is one where each plaintiff shows that he or she would have

earned more money investing his or her SGLI death benefits had Prudential paid the money as

required by law." Pl. Opp. at 3.  To the contrary, Prudential's position—recognized by the Court

in denying Plaintiffs' Motion for Class Certification—has always been that, to prevail on their

claims, Plaintiffs must show that they "suffered some actual, legally cognizable injury," whether

monetary or otherwise.  Mem. & Order at 11-12; *see also id.* at 9 n.3.

As a matter of liability, Prudential's briefing on summary judgment has plainly addressed

and thoroughly established not only Plaintiffs' lack of monetary injury, but also Plaintiffs' lack

of any actual injury, as a broader concept.  The undisputed evidence proves that: (*i*) no Plaintiff

---

[2]  Prudential incorporates by reference the facts and arguments set forth in its memorandum of
law in opposition to Plaintiffs' motion for summary judgment, filed on November 5, 2012, as
additional support for Prudential's motion for summary judgment.

has demonstrated any economic or monetary loss (whether on the basis of actual loss or opportunity cost), *see* Def. Mem. at 14-15, (*ii*) no Plaintiff has presented evidence of any actual non-monetary injury, *see* Def. Mem. at 16-17, and (*iii*) Plaintiffs cannot rely on abstract psychological injuries to establish the injury element of their claims, *see* Def. Mem. at 16-17.[3] Furthermore, Prudential has debunked Plaintiffs' variations on the circular and conclusory theory that the very fact of receiving an Alliance Account checkbook instead of a check somehow constitutes an actual injury in and of itself.  *See* Def. Opp. at 5-10; *see Medina-Munoz*, 896 F.2d at 8 (summary judgment opposition cannot "rest[] merely upon conclusory allegations, improbable inferences, and unsupported speculation").

Summary judgment is appropriate here, as in other cases, where Plaintiffs have failed to establish an injury in fact.  *See Johnson v. Hewlett-Packard Co.*, 809 F. Supp. 2d 1114, 1131 (N.D. Cal. 2011); *Dyll v. Adams*, 167 F.3d 945, 947 (5th Cir. 1999); *see also Berg v. First State Ins. Co.*, 915 F.2d 460, 467-68 (9th Cir. 1990) (affirming grant of summary judgment on fraud claims—as well as claims for breach of fiduciary duty, and breach of the covenant of good faith and fair dealing—because of plaintiffs' failure to prove the fact of injury).

Plaintiffs' only response is a weak attempt to distinguish Prudential's authorities one by one on the ground that they did not involve retained asset accounts.  *See* Pl. Opp. at 10.  But Prudential did cite several cases involving retained asset accounts in which the court found no injury.  In *Phillips*, the court held that the plaintiff failed to allege facts showing any "resultant injury" from receiving an Alliance Account.  2011 WL 5915148, at *2.  In *Clark*, the court held that the insurance company "is entitled to summary judgment on [plaintiff's] breach of contract

---

[3]  In contrast to their arguments for class certification, Plaintiffs now concede that they do not seek to recover for "abstract injuries such as 'embarrassment, frustration' and 'similar abstractions."  *Compare* Plaintiffs' Supplemental Brief in Support of Class Certification, Doc. No. 111, at 7 (June 22, 2012), *with* Pl. Opp. at 7 n.3.

claim because [plaintiff] did not suffer any damages" from receiving a retained asset account.

2010 WL 3636194, at *5.[4] All of the cases that Plaintiffs seek to distinguish embody the

fundamental point that—separate and apart from any question of remedy—without proving some

actual injury, monetary or otherwise, a plaintiff simply cannot establish liability for any of the

causes of action Plaintiffs purport to bring here.[5]

> ### B.   Plaintiffs' Lack Of Injury Means They Cannot Prove An Element Of Each Of Their Causes Of Action.

Because Plaintiffs are unable to establish any legally cognizable injury, both of Plaintiffs'

briefs attempt to change the topic entirely by quickly glossing "the narrow issue of whether

Plaintiffs have suffered any actual injury," Mem. & Order at 2, and fast-forwarding to the

premature question of their preferred remedies.[6] Specifically, Plaintiffs insist that the fact that a

plaintiff suffered no monetary loss, as is the case here, does not bar the remedies of disgorgement

and interest.  This misplaced focus on "monetary loss" and available remedies is entirely beside

the point; *no remedy* is available unless and until Plaintiffs prevail on their claims.  As Plaintiffs

---

[4] The only case that plaintiffs cite involving retained asset accounts is *Mogel v. Unum Life Insurance Co. of America*, 547 F.3d 23 (1st Cir. 2008).  In *Mogel*, however, the First Circuit did not hold that a beneficiary suffers a cognizable injury when he or she receives a retained asset account.  Rather, the court held that, at the motion to dismiss stage, a retained asset account did not constitute a "lump sum payment" under the particular contract at issue in that case.  *Id.* at 26.  But as this Court has already held, even if "an Alliance Account is not the same as a lump sum payment," that "does not necessarily mean that a beneficiary was injured by receiving an Alliance Account."  Mem. & Order at 9-10.

[5] Plaintiffs then urge this Court to establish their right to disgorgement on the basis of decades-old cases involving entirely different facts and causes of action than those claimed here – cases that are far more readily distinguishable than those cited by Prudential.  *See, e.g.*, *Janigan v. Taylor*, 344 F.2d 781 (1st Cir. 1965) (defrauded seller cases under federal securities laws); *Olwell v. Nye & Nissen Co.*, 26 Wash. 2d 282 (1946) (undisclosed and uncompensated conversion of egg-washing machine).

[6] As Prudential addressed in its brief in its Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment, the question of whether Plaintiffs' preferred remedies are available goes far beyond the "narrow issue of actual injury" on which summary judgment briefing was ordered and should not be entertained.  Def. Opp. at 10-17.

now concede, to prevail on their claims, "Plaintiffs must show 'some cognizable, legal injury.'"

Pl. Opp. at 3; *see also* Mem. & Order at 11.  This "threshold question of whether Plaintiffs

suffered any cognizable injury" applies "regardless of what measure of damages Plaintiffs

choose."  Mem. & Order at 11-12.

Even if Plaintiffs could prove the other elements of the causes of action alleged (which

they cannot), Plaintiffs' failure to establish a resultant injury or impoverishment is "fatal to

recovery."  *Dyll*, 167 F.3d at 947; Def. Mem. at 11-14.  Even assuming that a technical breach or

violation could be established, the appropriate remedy when a "breach cause[s] no loss" is

nominal damages.  Restatement (Second) of Contracts § 346(2) (1981) ("If the breach caused no

loss or if the amount of the loss is not proved under the rules stated in this Chapter, a small sum

fixed without regard to the amount of loss will be awarded as nominal damages.").

Although it is undisputed that "Plaintiffs must show 'some cognizable, legal injury'" to

establish each of their claims, Pl. Opp. at 3, Plaintiffs attempt to invent injury out of a hornbook

on remedies and to ignore one of the elements of each of their causes of action.[7]  For example,

Plaintiffs claim that disgorgement is appropriate because Prudential was unjustly enriched, but

they fail to establish any injury that would allow any of them that remedy.  *See* Dan B. Dobbs,

*Law of Remedies* § 4.1(1) (2d ed. 1993) ("Unjust enrichment has both a substantive and a

remedial aspect.  The substantive question is whether the plaintiff has a right at all."); *see, e.g.*,

*Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 57 (1st Cir. 2009)

(Massachusetts law requires "unjust enrichment of one party and unjust detriment to another

---

[7]  The amicus brief filed by the American Legion, insisting that a wrongdoer shall not profit from
his own wrongdoing, completely ignores the issue on which the Court ordered briefing.  Under
the Amicus' singular logic, all standing requirements and statutes of limitations must be
abolished and every case holding that fact of injury is an element of Plaintiffs' causes of action
was wrongly decided.  *See* Def. Mem. at 11-14.

party") (citation omitted); *Kerin v. U.S. Postal Serv.*, 116 F.3d 988, 994 (2d Cir. 1997)

("[E]nrichment of the defendant alone is insufficient to sustain a damage award for unjust

enrichment—the plaintiff must also show that the enrichment was unjust and that it caused the

plaintiff harm."). *See* Def. Opp. at 13-16.

Plaintiffs also argue they need not show "monetary loss" to be eligible for restitution for

a breach of fiduciary duty.  Even if this argument were correct as a question of remedies,

Plaintiffs are not excused from satisfying the elements of a fiduciary duty claim—which would

require not only establishing that a fiduciary duty exists (which it does not), but also proving that

a plaintiff suffered an actual injury caused by the alleged breach.  Def. Mem. at 13; Def. Opp. at

12-13.  The fiduciary duty cases on which Plaintiffs rely clearly involved an actual injury,

whether monetary or otherwise.[8]  Plaintiffs also seek to rely on narrow lines of cases involving

specific fiduciary duties that no court has applied in the context of a retained asset account.  *See,*

*e.g.*, *Nichols v. Minnick*, 885 N.E.2d 1, 5 (duty of disclosure that a real estate broker owes to a

seller); *United States v. Project on Gov't Oversight*, 572 F. Supp. 2d 73, 76 (D.D.C. 2008) (duty

of government employee to employer not to engage in outside employment or accept outside

remuneration).

Plaintiffs cite the Restatement and an amicus brief filed in a different action by the

reporter and advisers to the Restatement (Third) Restitution for the proposition that, in certain

---

[8] *See, e.g.*, *In re Refco Inc. Sec. Litig.*, 826 F. Supp. 2d 478, 488 (S.D.N.Y. 2011) (claims arising
from "losses suffered when assets were allegedly transferred from segregated accounts at Refco
LLC to unprotected accounts at Refco Capital Markets, Ltd."); *Powers v. Ryan*, No. CIV. A. 00–
10295–00, 2001 WL 92230, at *2-3 (D. Mass. Jan. 9, 2001) "(injury where brother did not
provide sister with shares in successor entity despite owing a duty); *Berish v. Bornstein*, 770
N.E.2d 961, 977 (Mass. 2002) (breach of a duty "to provide for the necessary work of
maintenance, repair and replacement of the common areas and facilities" caused injury of the
ongoing state of disrepair of those areas) (internal punctuation omitted); *Nichols v. Minnick*, 885
N.E.2d 1, 5 (Ind. 2008) (commission paid by plaintiff would be disgorged because broker failed
to disclose loan to purchaser).

instances, a plaintiff "need not prove compensatory damages to obtain disgorgement relief." *See* Pl. Opp. at 5.  Regardless of whether relief is compensatory or equitable, Plaintiffs still must prove that they have met the elements of the cause of action in to be *entitled* to relief in the first place.  *See* Def. Mem. at 14-16.  Only "[w]hen the plaintiff's substantive rights are known, [may the] the remedies questions . . . be asked."  Dan B. Dobbs, *Law of Remedies* § 1.1 (2d ed. 1993).

Importantly, the reporter's amicus brief concerns the injury-in-fact requirement of Article III standing.  Nowhere in the amicus brief does the Reporter argue that injury-in-fact be removed as an element of a cause of action.  Regardless of what remedy might ultimately be available, Plaintiffs must satisfy the elements of each of their claims before any remedy could be available, and each of Plaintiffs' claims requires a legally cognizable injury regardless of the appropriate remedy.  Def. Mem. at 11-14; Pl. Opp. at 3.[9]

## II.    The Undisputed Facts Establish No Plaintiff Suffered A Cognizable Injury.

Plaintiffs do not dispute that they suffered no financial injury caused by receiving an Alliance Account checkbook instead of a check.  *See* Pl. Opp. at 3, 7, 7 n.3.  Plaintiffs further admit that they are not seeking to recover for "abstract injuries such as 'embarrassment, frustration' and 'similar abstractions.'"  *See* Pl. Opp. at 7 n.3.

Indeed, Plaintiffs admit facts demonstrating that they suffered no harm—financial or otherwise—caused by Prudential.

- Plaintiffs do not dispute that Prudential sent each Plaintiff documents explaining how an Alliance Account worked and specifically stating that each Plaintiff could close his or her Alliance Account at any time by writing a check for the full amount.  (Plaintiffs'

---

[9]  For Plaintiffs' contract-based causes of action, disgorgement is not an appropriate remedy.  *See* Def. Opp. at 11-14; *Franconero v. Universal Music Corp.*, No. 02 Civ. 1963 (BSJ), 2011 WL 566794, at *4 (S.D.N.Y. Feb. 11, 2011) ("It is well-settled that '[d]isgorgement . . . is not an appropriate remedy for a breach of contract'") (citation omitted).  For claims based on fraud, unjust enrichment, and fiduciary duty, the substantive elements of the claim, including injury, must be proved before Plaintiffs are entitled to recovery.  Def. Mem. at 13-14.

Response to Defendant's Statement of Undisputed Facts Pursuant to Local Rule 56.1 ("Pl. 56.1 Resp.") ¶¶ 10-11, 15, 21, 23-24, 35-36, 46-47, 54, 56-57, 63, 65-66, 72, 74-75, 79, 81-82, 90, 92-93, 99, 101-02).

- Plaintiffs admit that each Plaintiff understood that he or she could access their funds by writing a check. (*Id.* ¶¶ 18, 31, 41, 52, 60, 68, 76-77, 86, 95, 105.)

- Plaintiffs do not dispute that they were each able to access their Alliance Account funds when they wished by writing a check, and that they each earned interest on the funds that remained in their Alliance Account. (*Id.* ¶¶ 17, 25-26, 37-39, 48, 58, 67, 75-76, 83, 94, 103-04.)[10]

- Plaintiffs also concede that Prudential did nothing to discourage any of them from writing a check or closing their Alliance Accounts. (*Id.* ¶¶ 20, 32, 43, 51, 53, 62, 71, 76, 78, 89, 98.)

- Plaintiffs admit that they did not miss any opportunities or incur any fees or penalties because they received an Alliance Account. (*Id.* ¶¶ 19, 30, 42, 49, 59, 69, 76, 87, 97, 107.)

- Plaintiffs admit that rather than immediately withdrawing all of their money and investing it elsewhere, as each of them could easily have done (and as one Plaintiff did), most Plaintiffs chose to leave at least some portion of their money in their Alliance Accounts for some period. (*Id.* ¶¶ 17, 26, 28, 37-38, 50, 58, 67, 70, 83, 85, 88, 106.)

The undisputed evidence—that Plaintiffs received Alliance Accounts credited with the full amount of their insurance proceeds, that Plaintiffs had constant access to their Alliance Account funds, and that Plaintiffs in fact understood, utilized and even benefited from the arrangement— conclusively establishes that no Plaintiff suffered a legally cognizable injury.

---

[10]  Plaintiffs dispute—without factual support—that the check Mr. Lucey wrote to close his Alliance Account was not honored because the signature on the check did not match the signature card, instead asserting that "Prudential chose twice not to honor Mr. Lucey's 'check' and claimed it was because the signature did not match." (Defendant's Statement of Undisputed Facts Pursuant to Local Rule 56.1 in Support of its Motion for Summary Judgment ("Def. 56.1 Stmt.") ¶ 39, Pl. 56.1 Resp. ¶ 39). Although Plaintiffs cite to "Clune Decl. Ex. 14 at 139:1-140:24" (Pl. 56.1 Resp. ¶ 39), that testimony provides no admissible evidence in support of Plaintiffs' accusation, which is also belied by the fact that Prudential sent Mr. Lucey a live check to close the account just days after he attempted to close the account. (Def. 56.1 Stmt. ¶ 39.)

**III.    There Was No "Delay" Because Plaintiffs Had Full Access To Their Funds At All Times.**

Plaintiffs' final attempt to show they were injured by the fact of receiving an Alliance Account checkbook—characterized as "delay"—must fail. Plaintiffs fail to distinguish between refusing to make funds available and making funds available through an Alliance Account. Plaintiffs do not dispute that each of them could freely withdraw funds in their Alliance Accounts, in whole or in part, at any time (and six Plaintiffs actually withdrew less than the whole amount on several occasions). These undisputed facts expose Plaintiffs' theory of delay as a fiction. *See Phillips*, 2011 WL 5915148, at *2, 4 (finding no injury as a result of receiving an Alliance Account rather than a check, and noting that "[a]fter plaintiff submitted the Claim Form, Prudential opened an 'Alliance Account' in her name at which point plaintiff had *complete access to the proceeds*") (emphasis added).

Furthermore, in an attempt to show that delay is a compensable injury, and that there was delay in this case, Plaintiffs mischaracterize the holdings of cases Prudential cites. While delay *can be* a compensable injury, here, there was no delay. *See, e.g.*, *Arete Partners, L.P. v. Gunnerman*, 643 F.3d 410, 415-16 (5th Cir. 2011) ("[I]nterest does not accrue on funds *to which the plaintiff has access* . . . if the plaintiff can access those funds without condition, then there is no need to compensate him in the event he does not.") (emphasis added). To the extent that each Plaintiff did not withdraw money from his or her Alliance Account immediately, or to the extent that a Plaintiff withdrew only a portion of his or her money at a given time, that outcome was entirely within each Plaintiff's control. *Phillips*, 2011 WL 5915148, at *5 ("Upon creating the [Alliance A]ccount, Prudential no longer controlled how the money should be paid out to the plaintiff.").

11

Plaintiffs' reliance on *Arthur D. Little, Inc. v. Dooyang Corp.*, 147 F.3d 47, 57 (1st Cir. 1998), and *Walker v. City of Lakewood*, 272 F.3d 1114, 1124 (9th Cir. 2001), regarding delayed payment demonstrates the flaw in their purported "injury" in this case.  In both of those cases the plaintiffs were in fact *unable* to access and use their money, and that constituted a delay.  *See* Def. Opp. at 6-7.  Plaintiffs have not cited a single case where a court found an injury because of "delay" where the plaintiffs had access to their money.  Here, the undisputed evidence confirms that once Plaintiffs received the checkbook, Plaintiffs had access to withdraw and use their funds at all times.  That power to control how and when Plaintiffs accessed their money was handed directly over to Plaintiffs—whether or not they chose to exercise it—through the "uncomplicated procedure" of writing a check.  *See Merrimon v. Unum Life Ins. Co. of Am.*, 845 F. Supp. 2d 310, 323 (D. Me. 2012) (granting summary judgment to defendants on contract and statutory claims, finding no delay because defendant "provided the Plaintiffs with unconditional access to their benefits [through a retained asset account], the same . . . as if it had issued a check").

## <u>CONCLUSION</u>

Prudential's motion for summary judgment should be granted with respect to each cause of action against each Plaintiff, and Plaintiffs' motion for summary judgment should be denied.

Respectfully submitted,

/s/ Michael K. Isenman
Paul E. Nemser (BBO # 369180)
Alison V. Douglass (BBO # 641494)
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts 02109
Tel: (617) 571-1000
Fax: (617) 523-1231

Richard M. Wyner (pro hac vice)
Michael K. Isenman (pro hac vice)
GOODWIN PROCTER LLP
901 New York Avenue, N.W.
Washington, D.C. 20001
Tel:  (202) 346-4000
Fax: (202) 346-4444

Dated:  November 20, 2012          *Counsel for Defendant The Prudential*
                                   *Insurance Company of America*


## CERTIFICATE OF SERVICE

    I, Michael K. Isenman, hereby certify that the foregoing document, filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 20, 2012.

/s/ Michael K. Isenman