# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| In re Prudential Insurance Company of America SGLI/VGLI Contract Litigation | Master Case No. 3:11-md-02208-MAP<br><br>THIS DOCUMENT RELATES TO:<br>All Cases<br><br>Leave to File Granted on Nov. 22, 2013 |

## DEFENDANT'S SUPPLEMENTAL SUBMISSION PURSUANT TO THE COURT'S NOVEMBER 22, 2013 MEMORANDUM AND ORDER

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT......................................................................................................... 2

I.      Plaintiffs Are Not Entitled to Nominal Damages on Any Claim........................................ 2

        A.      Nominal Damages Cannot Be Awarded Because Plaintiffs Have Not
                Shown and Cannot Show Any Actual Breach of Contract. ................................... 2

        B.      Any Nominal Damage Award Would Be, At Most, A Mere Token. .................... 5

II.     Even if Nominal Damages Were Appropriate, the Individualized Issues Present
        Here Preclude the Award of Nominal Damages on a Classwide Basis............................. 6

III.    The Court Cannot Issue Equitable Relief Forbidding the Use of Alliance
        Accounts. ...................................................................................................... 8

CONCLUSION................................................................................................... 10

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>:                                                                    <u>Page</u>

*Asociación De Educación v. Garcia-Padilla*,
   490 F.3d 1 (1st Cir. 2007)..................................................................................8

*Avritt v. Reliastar Life Ins. Co.*,
   No. 07-1817, 2009 WL 455808 (D. Minn. Feb. 23, 2009),
    *aff'd*, 615 F.3d 1023 (8th Cir. 2010).................................................................7

*Blount v. Johnson*,
   No. 7:04-cv-00429, 2007 WL 1577521 (W.D. Va. May 30, 2007)...........................5

*Bogan v. Boston*,
   489 F.3d 417 (1st Cir. 2007)..............................................................................5

*Buetow v. A.L.S. Enters., Inc.*,
   650 F.3d 1178 (8th Cir. 2011) ...........................................................................8

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983)............................................................................................8

*Clark v. Metro. Life Ins. Co.*,
   No. 3:08-cv-00158-LRH-VPC, 2010 WL 3636194 (D. Nev. Sept. 9, 2010) ...........4

*Comfort v. Lynn Sch. Comm.*,
   150 F. Supp. 2d 285 (D. Mass. 2001) .................................................................8

*Cummings v. Connell*,
   402 F.3d 936 (9th Cir. 2005) .............................................................................7

*Cupid v. Local 116*,
   No. 91-1809, 1993 WL 21794 (E.D. Pa. Jan. 27, 1993)........................................4

*Davenport v. DeRobertis*,
   653 F. Supp. 649 (N.D. Ill. 1987) ......................................................................7

*Deren v. Digital Equip. Corp.*,
   61 F.3d 1 (1st Cir. 1995)................................................................................6-7

*Dopp v. HTP Corp.*,
   947 F.2d 506 (1st Cir. 1991)..............................................................................5

*Flynn v. AK Peters, Ltd.*,
   377 F.3d 13 (1st Cir.2004).................................................................................4

*Griffith v. Colo. Div. of Youth Servs.*,
    17 F.3d 1323 (10th Cir. 1994) .................................................................6

*Hohe v. Casey*,
    956 F.2d 399 (3d Cir. 1992) .....................................................................7

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    230 F.R.D. 61 (D. Mass 2005) .................................................................7

*Johnson v. Robison*,
    415 U.S. 361 (1974) .................................................................................3

*Katz v. Pershing, LLC*,
    672 F.3d 64 (1st Cir. 2012) ......................................................................4

*Keife v. Metro. Life Ins. Co.*,
    931 F. Supp. 2d 1100 (D. Nev. 2013) ......................................................4

*Magnett v. Pelletier*,
    488 F.2d 33 (1st Cir. 1973) ......................................................................6

*McNair v. Synapse Group*,
    672 F.3d 213 (3d Cir. 2012) .....................................................................9

*Mogel v. Unum Life Insurance Co. of America*,
    547 F.3d 23 (1st Cir. 2008) .............................................................3, 9, 10

*Neponset Landing Corp. v. Nw. Mut. Life Ins. Co.*,
    902 F. Supp. 2d 149 (D. Mass 2012) .......................................................2

*Norwood v. W.C. Bain*,
    166 F.3d 243 (4th Cir. 1999) (per curiam) (en banc) ...............................7

*Omicron Capital, LLC v. Omicron Capital, LLC*,
    433 F. Supp. 2d 382 (S.D.N.Y. 2006) .....................................................9

*Phillips v. Prudential Life Ins. Co. of Am.*,
    No. 11-cv-0058-DRH, 2011 WL 5915148 (S.D. Ill. Nov. 28, 2011) ........4

*Price v. City of Charlotte, N.C.*,
    93 F.3d 1241 (4th Cir. 1996) ...................................................................6

*Romano v. U-Haul Int'l*,
    233 F.3d 655 (1st Cir. 2000) ................................................................5, 7

**STATUTES:**

38 U.S.C. § 1970 ..................................................................................................................3

**RULES:**

Fed. R. Civ. P. 23(b)(3)(D) ..............................................................................................1

**OTHER AUTHORITIES:**

Dan B. Dobbs, Law of Remedies § 1.1 (2d ed. 1993) ......................................................3

Dan B. Dobbs, Law of Remedies § 3.3(2) (2d ed. 1993) .................................................2

## PRELIMINARY STATEMENT

In its Memorandum and Order Regarding Supplemental Briefing dated November 22, 2013 (the "Order"), the Court indicated its intention to grant, "at a minimum," the "great bulk" of Prudential's Motion for Summary Judgment on the ground that none of the named Plaintiffs suffered any cognizable legal injury. Order at 2. The Court sought supplemental briefing on three issues: (i) whether Plaintiffs are entitled to nominal damages, (ii) if so, whether those damages extend to the class, and (iii) whether the Court is "obliged," in the absence of cognizable harm, to issue an injunction banning the use of Alliance Accounts. The answer to each question is no.

*First*, Plaintiffs are not entitled to any award of nominal damages because they have not established, and cannot establish, Prudential's liability for any claim. While nominal damages are available in theory for a breach of contract claim without a showing of actual injury, Plaintiffs have not demonstrated the existence of an actual breach of contract and are vulnerable to defenses such as waiver and ratification that would defeat the claim.

*Second*, even if an award of nominal damages were appropriate for the named Plaintiffs, there is no basis for extending that award to putative class members because individualized issues concerning each putative class members' use of the Alliance Account preclude certification of a class for trial, as set forth more fully in Prudential's Opposition to Class Certification. While the Court may certify a nominal-damages class for settlement purposes, the management of a trial would be insurmountably difficult due to the numerous individualized issues concerning 67,214 individuals. *See* Fed. R. Civ. P. 23(b)(3)(D).

Finally, Plaintiffs' lack of any cognizable injury and inability to establish liability on any claim precludes the award of any equitable relief by this Court. An injunction would be particularly inappropriate given the ample evidence that named Plaintiffs actually benefited from

the Alliance Account, raising the risk that an injunction requiring Prudential to close existing

Alliance Accounts would neither remedy a cognizable injury nor serve the interests of putative

class members, who can withdraw their funds at any time.

The Court's Order indicated that the Court intends to issue "a final appealable judgment"

after receiving the parties' submissions.  Order at 5.  To the extent that nominal damages may in

theory be available, however, which Prudential concedes as to the contract claim, such damages

may not be awarded without a finding of liability, which requires consideration of Prudential's

defenses and has not yet been adjudicated.  The Court should thus deny Plaintiffs' Motion for

Summary Judgment, grant Defendant's Motion for Summary Judgment with respect to Counts 1,

3, 4, 5, 6 and 7 of the Complaint on the ground that Plaintiffs have not suffered any legally

cognizable injury, and permit Plaintiffs' breach of contract claim, which has not yet been

adjudicated on the merits, to proceed as a claim for nominal damages only on behalf of the

named Plaintiffs.

## ARGUMENT

### I.      Plaintiffs Are Not Entitled to Nominal Damages on Any Claim.

#### A.      Nominal Damages Cannot Be Awarded Because Plaintiffs Have Not Shown and Cannot Show Any Actual Breach of Contract.

While nominal damages are theoretically available for a breach of contract claim in the

absence of a showing of injury as a "symbolic" remedy, *see Neponset Landing Corp. v. Nw. Mut.

Life Ins. Co.*, 902 F. Supp. 2d 149, 165 (D. Mass 2012), they cannot be awarded in this case

because Plaintiffs cannot prove the existence of a breach of the SGLI contract.  *See* Def.'s Opp.

to Class Cert., at 12–13.  Nominal damages are a remedy, and thus, "are awarded . . . when the

plaintiff establishes a cause of action against the defendant but is unable to prove damages."

Dan B. Dobbs, Law of Remedies § 3.3(2) (2d ed. 1993).  The question of which remedy is

appropriate cannot be reached until a "plaintiff has established a substantive right" to recover. *See id.* at § 1.1 (Only "[w]hen the plaintiff's substantive rights are known, the remedies question can be asked.").

In contrast to the policy language at issue in *Mogel v. Unum Life Insurance Co. of America*, 547 F.3d 23 (1st Cir. 2008), the "lump sum" language in the SGLI contract is drawn directly from a statute—the Servicemembers Group Life Insurance Act ("SGLIA"), 38 U.S.C. § 1970—which is administered by the Veterans Administration ("VA").  The VA interprets "lump sum" to mean either a check or a deposit into the Alliance Account—an interpretation that the United States Supreme Court has held is entitled to "great deference."  *See Johnson v. Robison*, 415 U.S. 361, 367–68 (1974) (endorsing statutory interpretation that was "supported by the administrative practice of the Veterans' Administration"; "'When faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration.'") (quoting *Udall v. Tallman*, 380 U.S. 1, 16 (1965)).  This agency interpretation of the SGLIA informs the meaning of "lump sum" as used in the contract.

The course of performance by the VA and Prudential confirms their joint understanding that settlement through the use of Alliance Accounts was permissible under the terms of the governing agreement.  *Id.*; *see also* Tr. of Mot. Hr'g Held On 12/5/2012, at 6–7 (Dec. 11, 2012), Doc. No. 168; Def.'s Statement of Undisputed Facts Pursuant to Local Rule 56.1, at 3–7 (Oct. 5, 2012) (hereinafter, "Def. 56.1") (describing the VA's and the Department of Defense's approval of the Alliance Account program beginning in 1999, when the  program was instituted). Prudential's affirmative defenses, such as ratification and waiver, provide an additional bar to

Plaintiffs' contract claim.  Def.'s Opp. to Class Cert., at 19–22.[1]  As a result, Plaintiffs cannot establish a right to recovery of any kind on their contract claim, precluding an award of nominal damages.

Nor can Plaintiffs obtain nominal damages in connection with their claim for violation of the SGLIA.  *See* Pl.'s Br. in Support of Summary Judgment, at 24–25, n.10, n.11 (seeking nominal damages only for breach of contract and breach of statute claims).  Absent a legally cognizable injury, Plaintiffs have no standing to pursue a claim for violation of the SGLIA, much less establish liability and obtain damages.  *Compare Flynn v. AK Peters, Ltd.,* 377 F.3d 13, 23 (1st Cir.2004) (implying breach alone is a sufficient injury to confer standing for a contract claim by permitting plaintiffs to pursue nominal damages where breach caused no injury) *with Katz v. Pershing, LLC*, 672 F.3d 64, 80 (1st Cir. 2012) (defendant's alleged failure to comply with privacy statute insufficient to confer standing where plaintiff demonstrated no injury).

Plaintiffs' contention that "nominal damages are available for the violation of a federal statutory right" even in the absence of injury is belied by the unpublished case that they cite. Pl.'s Br. in Support of Summary Judgment, at 24 n.10; *see Cupid v. Local 116*, No. 91-1809, 1993 WL 21794, at *8 (E.D. Pa. Jan. 27, 1993).  *Cupid* and the cases upon which it relies indicate only that a violation of procedural due process rights is sufficient injury to support an award of nominal damages because "'the right to procedural due process is absolute . . . and because of the importance to organized society that procedural due process be observed.'"  *See*

---

[1] Summary judgment has repeatedly been granted to defendants in cases involving retained asset accounts where courts found no injury, without an award of nominal damages. *See Clark v. Metro. Life Ins. Co.*, No. 3:08-cv-00158-LRH-VPC, 2010 WL 3636194, at *3–6 (D. Nev. Sept. 9, 2010) ("MetLife is entitled to summary judgment on Clark's breach of contract claim because Clark did not suffer any damages as a result of MetLife's breach."); *Keife v. Metro. Life Ins. Co.*, 931 F. Supp. 2d 1100, 1109 (D. Nev. 2013) (granting summary judgment in favor of defendant when plaintiff suffered no injury); *see also Phillips v. Prudential Life Ins. Co. of Am.*, No. 11-cv-0058-DRH, 2011 WL 5915148, at *3 (S.D. Ill. Nov. 28, 2011) (dismissing contract claim because "there is no breach of contract or resultant injury to the plaintiff").

*id.* at *8, n.8 (quoting *Carey v. Piphus*, 435 U.S. 247, 266 (1978)).  There is no basis for extending that context-specific holding to violations of the SGLIA.

Furthermore, as set forth in Defendant's Motion to Dismiss and Opposition to Class Certification, Plaintiffs have not established and cannot establish a violation of SGLIA because undisputed evidence shows that the VA interprets the statute to allow use of the Alliance Account and such a claim would be susceptible to the same defenses as a contract claim, requiring individualized proof.[2]  Def.'s Opp. to Class Cert., at 25–26.

Finally, even if nominal damages were theoretically recoverable under Plaintiffs' statutory and contract claims, awarding nominal damages for both of these claims—which arise from the same facts and are comprised of the same elements—would violate the bedrock principle that "double awards for the same injury are impermissible."  *See Bogan v. Boston*, 489 F.3d 417, 425 (1st Cir. 2007) (plaintiffs were fully compensated even though only one of two claims was presented at trial because both claims were based on the same underlying facts and sought identical relief); *Dopp v. HTP Corp.,* 947 F.2d 506, 517 (1st Cir. 1991) (vacating and remanding two overlapping awards because "the law abhors duplicative recoveries").  The prohibition against double recovery applies in the context of nominal damages.  *See, e.g.*, *Blount v. Johnson*, No. 7:04-cv-00429, 2007 WL 1577521, at *9 n.9 (W.D. Va. May 30, 2007).

### B.    Any Nominal Damage Award Would Be, At Most, A Mere Token.

Even if Plaintiffs were able to succeed on any of their claims, settled First Circuit law provides that nominal damages should be no more than a "mere token."  *See Romano v. U-Haul Int'l,* 233 F.3d 655, 670-71 (1st Cir. 2000) (holding that "the nature of nominal damages compels . . . that the amount be minimal" and affirming jury instruction that "nominal damages [must] be

---

[2] Plaintiffs' statutory claim also fails because there is no private right of action under the SGLIA.  *See* Mot. to Dismiss at 13–16.

minimal 'such as one dollar'"); *Magnett v. Pelletier,* 488 F.2d 33, 35 (1st Cir. 1973) (rejecting a

nominal damages award of $500 and refusing to permit a nominal damages award in excess of

$1 because "[n]ominal damages are a mere token"); *see also Price v. City of Charlotte, N.C.*, 93

F.3d 1241, 1250 (4th Cir. 1996) (nominal damages are "typically one dollar"); *Griffith v. Colo.

Div. of Youth Servs.*, 17 F.3d 1323, 1327 (10th Cir. 1994) ("Nominal damages are a mere token,

signifying that the plaintiff's rights were technically invaded even though he could not prove any

loss or damage.").  If the Court were to award nominal damages after trial, a minimal nominal

damages award would be particularly appropriate considering that Plaintiffs failed to mitigate

damages and that many members of the putative class actually benefited from receiving Alliance

Accounts: admitting that the account was convenient, making frequent use of the Alliance

Account drafts, and choosing not to close the accounts for an extended period of time.[3]

## II.    Even if Nominal Damages Were Appropriate, the Individualized Issues Present Here Preclude the Award of Nominal Damages on a Classwide Basis.

Individualized issues preclude the certification of a class for trial purposes on the award

of nominal damages.  Although it is theoretically possible to extend nominal damages to a class

of litigants, adjudication of Prudential's defenses—specifically waiver and ratification—would

require individualized discovery, evidence, and adjudication for each of more than 67,000

putative class members regarding each individual's use of the Alliance Account, including how

long each Plaintiff decided to keep his or her account open, how many drafts each Plaintiff chose

to write, and other inherently individualized factual questions.[4]  *See, e.g.*, *Deren v. Digital Equip.*

---

[3] *See* Def.'s Opp. to Class Cert., at 8–9, 15–18.

[4] In addition, as set forth in the Opposition to Class Certification, any attempt to certify a class for nominal damages would require the Court to determine the applicable statute of limitations and limit the class accordingly.  *See* Def.'s Opp. to Class Cert., at 40–47.  In addition, the class cannot be certified if it contains members who lack standing to sue.  *See id*. at 49.

*Corp.*, 61 F.3d 1, 3 (1st Cir. 1995) (defenses of waiver and ratification barred recovery where for more than three years "plaintiffs enjoyed the benefits of the bargain they now wish to avoid"). These individualized issues would predominate, rendering classwide adjudication at trial of even nominal damages completely unmanageable. *See Avritt v. Reliastar Life Ins. Co.*, No. 07-1817, 2009 WL 455808, at *7 (D. Minn. Feb. 23, 2009), *aff'd*, 615 F.3d 1023 (8th Cir. 2010) (defenses of ratification or waiver "are subject to individualized, rather than common, proof" rendering class certification under Fed. R. Civ. P. 23(b)(3) inappropriate because "[t]he need for individualized proof . . . would render management of a class action difficult and reduce or eliminate the efficiencies typically associated with class litigation"); *see also In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 96 (D. Mass 2005) (denying in part request for class certification under Fed. R. Civ. P. 23(b)(3) where the need to adjudicate individualized issues would "overwhelm the common questions and render the class action inefficient" and "unmanageable"); Def.'s Opp. to Class Cert., at 19–22, 25–26.

Even if a class could be certified and liability established, anything more than a very modest award for each of the 67,214 class members would defeat the purpose of nominal damages. Other courts have grappled with this issue. Some courts have awarded $1 as nominal damages to the class as a whole, *see, e.g.*, *Norwood v. W.C. Bain*, 166 F.3d 243, 245 (4th Cir. 1999) (per curiam) (en banc), or solely to the named Plaintiffs, *see, e.g.*, *Davenport v. DeRobertis*, 653 F. Supp. 649, 657 (N.D. Ill. 1987). Other courts have awarded $1 as nominal damages to each class member, even though with a class of thousands, the total nominal amount was more than a mere token. *See, e.g.*, *Cummings v. Connell*, 402 F.3d 936, 944 (9th Cir. 2005); *Hohe v. Casey,* 956 F.2d 399, 415–16 (3d Cir. 1992). While the amount of nominal damages "is not limited to $1" in all instances, *Romano*, 233 F.3d at 671, any classwide award of nominal

7

damages to each of 67,214 individuals should be close to $1 to accord with the concept of a "mere token" and so as not to impose a disproportionate cost on Prudential for conduct that this Court has already found did not cause any actual injury to Plaintiffs.

### III.    The Court Cannot Issue Equitable Relief Forbidding the Use of Alliance Accounts.

Plaintiffs are not entitled to injunctive relief because they cannot demonstrate that such relief would remedy any actual injury or even benefit named Plaintiffs or putative class members.  To award the requested injunctive relief, the Court must find that "(1) plaintiffs prevail on the merits; (2) plaintiffs would suffer irreparable injury in the absence of injunctive relief; (3) the harm to plaintiffs would outweigh the harm the defendant would suffer from the imposition of an injunction; and (4) the public interest would not be adversely affected by an injunction."  *Asociación De Educación v. Garcia-Padilla*, 490 F.3d 1, 8 (1st Cir. 2007).

This Court's finding that Plaintiffs suffered no cognizable legal injury from receiving Alliance Accounts, standing alone, forecloses the possibility of any award of equitable relief for two reasons.  *First*, Plaintiffs lack standing to seek injunctive relief because injury is a standing prerequisite.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (for a plaintiff to be entitled to injunctive relief, "the injury or threat of injury must be both real and immediate, not conjectural or hypothetical") (internal quotations omitted); *accord Comfort v. Lynn Sch. Comm.*, 150 F. Supp. 2d 285, 295–96 (D. Mass. 2001).  *Second*, the existence of an "irreparable injury" is also a necessary requirement for a permanent injunction.  *See Buetow v. A.L.S. Enters., Inc.*, 650 F.3d 1178, 1183 (8th Cir. 2011) (reversing grant of permanent injunction absent irreparable injury because injury is "an essential and universal predicate to the grant of equitable relief").

An injunction forbidding the use of Alliance Accounts would be especially inappropriate in light of evidence indicating that some named Plaintiffs actually benefited from receipt of the account, choosing to withdraw a portion of the funds while leaving the remainder to earn

8

interest, or even admitting that the account was convenient or otherwise useful.  Def.'s Opp. to

Class Cert., at 15–18.  This evidence raises the prospect that an injunction would cause harm to

some absent class members without redressing any cognizable injury to those named Plaintiffs

who seek to impose an injunction on the class.  Indeed, an injunction could be of no possible

benefit to any named Plaintiff, since all but one have long since closed their accounts, the

remaining one testified she knew she could close her account at any time, and none of them is

likely to receive an Alliance Account again.[5]  *See McNair v. Synapse Group*, 672 F.3d 213, 225–

26 (3d Cir. 2012) ("Because [plaintiffs] have not established any reasonable likelihood of future

injury in this case, they have no basis for seeking injunctive relief.")

        Nor can Plaintiffs succeed on the merits of their claims—another requirement for

injunctive relief—absent proof of a legally cognizable injury and other substantive elements of

their claims.  *See, e.g.*, *Omicron Capital, LLC v. Omicron Capital, LLC*, 433 F. Supp. 2d 382,

394 (S.D.N.Y. 2006) (plaintiff's failure to fulfill all the elements of its claim "precludes a finding

of success on the merits, and thus precludes any [permanent] injunctive relief").

        The First Circuit's decision in *Mogel v. Unum Life Insurance Co. of America*, 547 F.3d

23 (1st Cir. 2008) does not analyze whether injunctive relief should issue and cannot overcome

this Court's finding that Plaintiffs have not suffered any legally cognizable injury, which defeats

their request for injunctive relief.  Nor does *Mogel* dictate the outcome of this Court's analysis

on the merits of any claim:

- The First Circuit's decision in *Mogel* was based on the language of specific life insurance policies issued by UNUM—not the policy or statute at issue here.  547 F.3d at 26 (holding that "delivery of the checkbook did not constitute a 'lump sum payment' *called for by the policies*") (emphasis added).

---

[5] In addition, the applicable claim form has been amended so that claimants now choose between a check, electronic funds transfer, or an Alliance Account, and receive an Alliance Account if no election is made.

- The *Mogel* court was not presented with any extrinsic evidence of the contracting parties' intent in using the phrase "lump sum payment," unlike this case in which compelling evidence exists that the VA interpreted "lump sum" to include a lump sum payment into an Alliance Account.[6]

- As set forth above, unlike *Mogel*, in which the phrase "lump sum" was purely a creature of contract, the language at issue in this case originates in the SGLIA. Ample evidence exists that the VA interprets the phrase "lump sum" as used in the SGLIA to include lump-sum payments into an Alliance Account, and the VA's interpretation of the statute's language is entitled to great deference.

For these and other reasons, the First Circuit's decision in *Mogel* does not govern this case and certainly does not oblige this Court to award any relief to Plaintiffs, least of all the drastic remedy of an injunction barring the use of a claim-settlement method from which Plaintiffs themselves have benefited and forcing current account holders to close accounts that they may actually want to keep open.

## **CONCLUSION**

For the reasons set forth above, Prudential respectfully requests that the Court grant its motion for summary judgment on Counts 1, 3, 4, 5, 6 and 7 on the ground that Plaintiffs have suffered no legally cognizable injury, deny Plaintiffs' cross-motion for summary judgment, and allow Plaintiffs' breach of contract claim to proceed to an adjudication of liability as a claim for nominal damages only on behalf of the named Plaintiffs.

---

[6]  Among other things, the SGLI Contract was amended in September 2009 to make explicit the contracting parties' mutual understanding that "[t]he Insurance Company may fully discharge its payment obligations under the Group Policy with respect to lump sum payments by paying the full amount of insurance proceeds in a single distribution to an account held on deposit with the Insurance Company, either in the beneficiary's name or in trust for the beneficiary."  Def.'s Opp. to Class Cert., at 3 n.3.

Respectfully submitted,

Dated: February 14, 2014

/s/ Michael K. Isenman

Paul E. Nemser (BBO #369180)
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts 02109
Tel: (617) 571-1000
Fax: (617) 523-1231

Richard M. Wyner (pro hac vice)
Michael K. Isenman (pro hac vice)
GOODWIN PROCTER LLP
901 New York Avenue, N.W.
Washington, D.C. 20001
Tel: (202) 346-4000
Fax: (212) 355-3333

Edwin G. Schallert (pro hac vice)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Telephone: 212-909-6000
Fax: 212-909-6836

*Counsel for Defendant The Prudential
Insurance Company of America*

## CERTIFICATE OF SERVICE

I, Michael K. Isenman, hereby certify that the foregoing document, filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on February 14, 2014.

/s/ Michael K. Isenman

11